## H. H. WILLIAMS V. THE STATE.

No. 22760. Delivered February 23, 1944.
Rehearing Denied April 19, 1944.

180

The opinion states the case.

*Crenshaw, Dupree & Milam,* of Lubbock, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of murder with malice, and assessed a penalty of ten years in the penitentiary.

The facts show evidence that there had been some minor disturbances between appellant and the deceased, Mr. Hodges, relative to the cattle and hogs of appellant trespassing upon the cultivated lands of the deceased, who lived just adjoining appellant's farm in Terry County. There were no eyewitnesses to the tragedy, save appellant and the deceased. The State was relegated to the domain of circumstantial evidence, and such was charged upon by the trial court.

It was shown that appellant and the deceased met at a crossroad near the division line between their two farms on July 24, 1943, and soon thereafter Mr. Hodges' dead body was found in the road, appellant being nearby with an automatic shotgun in his hands, with three loaded cartridges therein and two empty shells nearby. Mr. Hodges' body was found to have been penetrated by No. 4 shot, there being within a distance of thirty-six inches on the front part of his body, from his knee to his shoulder, 110 shot; there also being an oblong wound large enough to contain three fingers of a man's hand to the right of his navel, which contained some shot. There was also found a further oblong wound in the back of his head, which also contained some gun wadding, this wound evidently having shattered the structure of the skull. There was also a deep powder burn on Hodges' left hand, and the heel of such hand was shattered. This body

was found by officers lying on its face, which was embedded in the sand up to its ears, and under the right-hand side of the body there was found a 410 pistol-shotgun, loaded and cocked; and also in Mr. Hodges' auto a 22 caliber rifle was found, fully loaded and cocked.

It was the theory of the State that appellant shot Mr. Hodges three times, once at a distance of about 50 feet; again at a lesser distance, the powder burns being testified to as active at a distance from the burned object of about 18 inches, and the State contending the final shot in the back of the head to have been delivered while Mr. Hodges lay in the road on his face.

Appellant's version thereof began with a threat in the latter part of February, 1943, testified to by his wife, wherein the deceased had told her that if appellant did not keep his hogs out of deceased's crops he would kill the hogs and appellant also, which threat was communicated to appellant. That on the evening of the killing appellant saw deceased near a vacant house on deceased's premises, and drove down to meet him and to try to adjust their differences. That deceased saw him and waved at him; that they met at the crossroads, and both got out of their cars; that deceased had this 410 pistol-gun in his hand, and appellant said to deceased, you seem to be hunting trouble, deceased replying, That's right, and I am fixed for it; that appellant ran back to his car and procured his automatic shotgun, and turning around he saw the deceased as if about to raise the 410, and appellant fired from his hip; that the deceased turned around, and appellant fired again, and deceased fell, and no further shots were fired by him; the parties were only about six to eight steps apart.

The first bill of exception complains on account of the failure of the trial court to sustain his motion for a change of venue in this cause. It is shown that a motion, properly supported by compurgators, was seasonably filed, and under the testimony of some nineteen witnesses, twelve of them expressed the opinion that due to the amount of discussion, and the prejudice expressed against appellant, they were of the opinion that he could not obtain a fair trial in Terry County. Appellant's remaining seven witnesses did not express any opinion in such matter. The State countered with the testimony of fourteen witnesses, who each testified that in his opinion appellant could obtain a fair trial in Terry County, although most of the witnesses testified that they had heard at one time or another that appellant had killed from one to seven or eight men.

We are cited by appellant to the case of Bond v. State, 50 S. W. (2d) 813. In that case it was shown that the deceased person had a large number of relatives in the county, and that four distant relatives actually sat upon the jury. The only newspaper published in the county, which was Terry County, published an article partially headed: "J. A. White shot down in cafe here Sunday without chance for life. * * *." We think the Bond case furnishes us no parallel to the present proof. In the case of Boyd v. State, 13 S. W. (2d) 104, the accused had previously been tried and convicted for a similar offense, and the matter had been widely discussed both orally and in the local papers, the charge being the making of a false entry in a local bank in which a shortage was evidently found by the bank examiners. In reversing this cause for a failure to change the venue, the court, quoting from McNeely v. State, 283 S. W. 522, said:

"The duty is upon the trial court to weigh the evidence, and if therefrom there arise conflicting theories, one tending to show prejudice of the nature mentioned and the other the contrary, the discretion as to the court is to adopt either. In the absence of abuse of this discretion, the judgment is not to be disturbed upon the appeal. If, however, the evidence is such that it leads to the conclusion that bias, prejudice, or prejudgment of appellant or his case is such as to render it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application."

In the case of Richardson v. State, 70 S. W. (2d) 1003, there seemed to be no substantial denial of the fact that there was great prejudice against the accused, who was charged with the killing of his own son. Out of the jury venire and talesmen presented, sixty-eight of them disqualified on account of an opinion, believing the accused guilty. We can readily see the wisdom of a reversal therein for a failure to change the venue. However we find no such unanimity of opinion presented here. In no way is there evidenced any consensus of a prejudgment of this case; no large disqualification of jurors by virtue thereof; no difficulty in procuring a jury shown, and no evidence of prejudice upon their part in their verdict. Applying the rule as above quoted, we find no evidence of bias, prejudice or prejudgment of this case such as to render it improbable that a fair and impartial trial could be given appellant in that county. It is true that certain rumors were testified to relative to how many men appellant had killed, nevertheless it is shown that appellant not only offered but proved a good reputation, not only for truth and veracity but also as a peaceable and law-abiding citizen, and no

intimation of any kind came from any witness in the trial relative to any rumor or any misconduct upon his part. We do not feel justified in saying that the trial judge abused his discretion in overruling the motion for a change of venue.

Bill of exceptions No. 2 complains of the failure of the trial court to allow appellant's attorney to ask the juror H. F. Brigance as to whether he had any conscientious scruples against the infliction of death as a punishment for crime in a proper case. The State objected to such question, stating that it would not insist upon the death penalty in the case. It is further shown that Mr. Brigance was taken on the jury, and the bill further shows that the court charged the penalty for murder with malice at death, or by confinement in the penitentiary. We are cited to the case of Prewitt v. State, 167 S. W. (2d) 194, which was reversed on original hearing because the trial court refused to allow the accused to propound to prospective jurors the identical question here presented; however, on motion for a rehearing this court held that before a reversal could be predicated upon such failure, it would be necessary to show that the accused was forced to accept an objectionable juror because of being caused to exercise a peremptory challenge to stand aside one who should have been challenged for cause. Such is not shown herein. Instead, it is shown that Mr. Brigance was accepted by both sides and served as a juror herein. The bill does not show what his answer would have been, and we are left in doubt as to which side of this controversy would have been satisfied therewith. We also do not know whether any objectionable juror appeared in the final selection, nor how many challenges were utilized in obtaining a jury. In line with the opinion on rehearing in the Prewitt case, supra, this bill is overruled.

Bill of exceptions No. 3 relates to allowing Mr. Carter to testify that he saw the undertaker put three fingers into a wound on the deceased's abdomen and move the fingers. This testimony was but what the witness saw relative to such wounds, and we think was admissible. It seems that the undertaker also testified to practically the same thing, and we find no objection thereto.

Bill of exception No. 4 complains of the witness Carter testifying as to what he found in further wounds on the body of deceased and the direction in which they penetrated the body, the objection being that the witness was not an expert on such matters. We think the witness could testify as to what he saw, the objection as to his not being an expert probably going to the weight rather than the admissibility of the testimony.

Bills of exceptions Nos. 5 and 7 relate to the testimony of certain witnesses from the Public Safety Department wherein they experimented with the automatic shotgun used by appellant, and the results thereof. It was shown that they used standard and well recognized experiments for the purpose of determining the pattern made by similar cartridges, using similar loads to the ones found in appellant's shotgun, surrendered by him at the scene of the shooting, their testimony being given only as to the results of such experiments. We think the results of such experiments were proper testimony, the conclusions to be drawn therefrom as applicable to the testimony being matters committed to the province of the jury.

Bill of exceptions No. 8 relates to the cross-examination of appellant's wife, who had been placed upon the stand by appellant's attorneys. The indictment alleges that this homicide occurred on or about July 24, 1943. Appellant's wife had testified on her direct examination that in the latter part of February, 1943, the deceased had come to her home and held a conversation with her about appellant's hogs getting into deceased's field, and that deceased had said, in substance, for her to tell her husband that if he did not keep his hogs out of deceased's field he was going to kill the hogs and appellant also, and she testified to having communicated this matter to appellant. She further testified to other matters not germane to this discussion. Upon cross-examination the State asked her one question, and that was "did she know of any hard feelings or misunderstanding or anything else that came up between the defendant and deceased since the latter part of February, 1943," to which she answered in the negative. We think such was a legitimate cross-examination of the wife who had theretofore given the details of a conversation between herself and the deceased in the latter part of February, 1943, as well as testifying to a further transaction prior to that time relative to a division fence. She also testified on direct examination that the February 1943 occasion was the last time she had seen Mr. Hodges prior to the time he was killed. We see no error reflected in such bill.

Appellant complained at the proper time relative to the trial court's charge in that in conjunction with the law of threats the charge of the court failed to incorporate therein the words spoken by deceased, if any, at the time of the homicide, as a portion of the things that could be taken into consideration in determining appellant's right of self-defense. The right of self-defense based on threats, when inuring to the benefit of one charged with a homicide, if presented by the evidence, should

be charged upon separately and apart from a charge on ordinary self-defense. See Branch's Penal Code, p. 1170, Sec. 2083. Evidently this doctrine is based upon Art. 1258, P. C., which reads in part as follows:

"Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the killing unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threat so made. * * *."

It is evident from a reading of this statute that the defense is relegated to, in so far as the law of threats is concerned, some act then done manifesting an intention to execute the threat so made. See Broussard v. State, 129 S. W. (2d) 295.

It is to be noted that the court's charge on self-defense alone did give the appellant the benefit of acting upon "the words, acts and conduct of the deceased, if any, or from his words, coupled with the acts and conduct of the deceased, if any, viewed from the standpoint of the defendant, H. H. Williams, under all the facts and circumstances within his knowledge." We think this was all he was entitled to under the law.

A charge of the court must be usually considered as a whole, and each separate paragraph thereof can not contain all the law of the case pertinent to the facts. We think the trial court's charge properly charged the law upon the facts relied upon by the State, and also all presented defenses, and also that same embodied the converse of the charge wherein same was provided for appellant's conviction.

The insufficiency of the evidence is asserted by appellant's attorneys in their brief. True it is that appellant was the only living eyewitness to the tragedy, and his testimony, if believed by the jury, might have resulted in his acquittal, but we find the State's theory as to this unfortunate occurrence supported by circumstances, if believed by the jury, that would do violence to appellant's version hereof. We think the testimony sufficiently cogent to support the theory of the State showing an unlawful killing, and we do not feel that we should set this verdict aside on account of the insufficiency of facts herein.

The jury were the judges of these facts, and we will not disturb their verdict.

The judgment will therefore be affirmed.

## ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant predicates his motion for rehearing upon two propositions; first being that the record reflects error in not granting a change of venue, the second that the evidence does not support the verdict.

The first proposition turns upon the question of whether this court can say from the record that the trial court abused his discretion in declining to order a change of venue. Two conflicting theories were presented to the court in the evidence heard upon the request for such change, presenting a situation upon which reasonable minds might differ as to the proper disposition of the motion. If the record reflected great difficulty in securing a jury, or that many jurors disqualified themselves because of opinions formed, it would add weight to appellant's contention. In the absence of such showing we think this court would scarcely be authorized in holding that the record shows an abuse of discretion on the part of the trial court.

In regard to the second proposition, it is one peculiarly resting with the jury. In order for us to hold with appellant's contention that the evidence is insufficient would amount to an assertion by us that taking all of the criminative circumstances in their strongest light that the jury had no evidence upon which to base their verdict. We think this would be going too far under the proven facts.

The motion for rehearing is overruled.