**STATE**

v.

**Leonard J. CASTORE.**

**No. 80–275–C.A.**

Supreme Court of Rhode Island.

Sept. 30, 1981.

**322**

Dennis J. Roberts II, Atty. Gen., Alyssa L. Talanker, Sp. Asst. Atty. Gen., for plaintiff.

Paula Rosin, Asst. Public Defender, for defendant.

## OPINION

KELLEHER, Justice.

This is a two-count criminal information charging Leonard J. Castore (Castore) with the commission of (1) an indecent assault against a child under the age of thirteen and (2) "the abominable and detestable crime against nature, sodomy * * *." Convictions were obtained on both counts following a Superior Court jury trial. Subsequently, the trial justice imposed a ten-year sentence on the abominable-and-detestable conviction and a five-year term on the indecent-assault count. The sentences were to run concurrently with the execution of portions of each sentence to be suspended.

At this moment, Castore is incarcerated as we consider his three-issue appeal in which he claims (1) a denial of his Sixth Amendment right to the effective assistance of trial counsel, (2) an error on the part of the trial justice who denied his motion for a judgment of acquittal on the "abominable and detestable" count, and (3) an abuse of the trial justice's discretion by

allowing certain testimony of an expert witness to be presented to the jury.

The victim of the alleged assaults was an eleven-year-old girl friend of Castore's two young daughters. One daughter was aged four, and the other was aged two. Hereinafter we shall refer to the eleven-year-old as Barbara, a name other than the one given her at birth.

Barbara testified that on Saturday morning, March 31, 1979, she arrived at the Castore residence at approximately 9 a. m. and joined the two-year-old and the four-year-old who were watching television in the living room. At some point during the morning, Barbara was compelled to heed the call of nature and proceeded to the bathroom, which was located on the upper floor of the house. She told the jury that upon arriving upstairs, she discovered that Castore was in the midst of taking a shower but that she proceeded to use the facilities anyway after admonishing him to remain in the shower until she would have left. According to her version of the events, Castore finished his ablutions, got out of the shower before she had left the room, and asked her to touch his penis. She refused, and Castore reportedly took her hand and forced her to touch him. Barbara stated that it was at this point that Castore's two-year-old daughter knocked on the bathroom door, providing a distraction that allowed her to flee to the living room.

Barbara told the jury that she intended to leave the house at this point but refrained from doing so because she was unwilling to leave the two girls, who were crying. Subsequent to this incident, Barbara stated that Castore called her upstairs to his bedroom; when she complied, he began to undress her. According to Barbara, it was once again Castore's younger daughter who interrupted the action by coming upstairs, thereby providing an opportunity for Barbara to escape into the bathroom. After spending several minutes there, Barbara returned to the living room and soon found herself alone with Castore when his daughters went outside to play. Barbara reported that Castore used this opportunity to ask her to "jerk him off" and to engage in fellatio, both of which requests she complied with because she was "scared of him."

Barbara returned home at approximately 2 p. m. and reported her version of these events to her older sister. The Cranston police were called by Barbara's mother, and in due course they arrested Castore at his home that afternoon.

Castore testified in his own defense and denied any involvement with Barbara. He insisted that on the Saturday morning in question the television set was inoperative. Castore attributed Barbara's tale of sexual molestation to her chagrin at his refusal of her request to be permitted to ride with him in a pickup truck that was being used to transport the television set to the repair shop. A friend of Castore's who was present at the refusal described Barbara as "distraught" because she could not go to the repair shop, and he quoted the eleven-year-old as telling Castore, "I will get even with you."

Because of our ultimate conclusion, there is no need to consider Castore's Sixth Amendment claim.

Castore's motion for a judgment of acquittal was based on the fact that the information charged him with committing "the abominable and detestable crime against nature, sodomy * * *." He takes the position that the state, having charged him with the commission of a specific act, to wit, sodomy, in order to obtain a conviction should be compelled to prove that he engaged in anal intercourse with Barbara.[1] Castore faults the trial justice for ruling that the term "sodomy" was nothing more than surplusage and need not be established by the state under G.L. 1956 (1969 Reenactment) § 11–10–1, provided that some other "abominable and detestable crime against nature" was proven during the course of the trial. Although Castore's argument is

---

1. At common law, anal intercourse was required in sodomy. Oral intercourse was not sufficient. *State v. Morrison*, 25 N.J.Super. 534, 96 A.2d 723 (Cty.Ct.1953); 3 Wharton, *Criminal Law* § 295 at 77 (14th ed. 1980).

superficially appealing, it does not withstand scrutiny in light of the legislative intent behind the statute.

We recently had occasion to examine the provisions of § 11–10–1 in *State v. McParlin*, R.I., 422 A.2d 742 (1980). There we noted that § 11–10–1 was intended to punish a "wide variety of unnatural acts of sexual copulation." *Id.* 422 A.2d at 744. We reasoned that the Legislature, in using the language "crime against nature," had intended both to give the statute a broad meaning and to avoid the exclusory effect that would inevitably result had the Legislature enumerated every act of unnatural sexual copulation that it intended to punish. *See State v. Santos*, R.I., 413 A.2d 58 (1980); *State v. Milne*, 95 R.I. 315, 187 A.2d 136 (1962). Thus, the use of the generic terms "crimes against nature" and "abominable and detestable" achieves the degree of comprehensiveness sought by the Legislature, yet simultaneously plainly conveys the nature of the prohibited activity. *See State v. Gibbons*, R.I., 418 A.2d 830 (1980); *State v. Levitt*, 118 R.I. 32, 371 A.2d 596 (1977); *State v. Milne*, 95 R.I. 315, 187 A.2d 136 (1962); *see also State v. Langelier*, 136 Me. 320, 8 A.2d 897 (1939).

With this background in mind, the result reached in *State v. McParlin* was almost predictable. In *McParlin* we addressed a challenge to a conviction obtained under the provisions of § 11–10–1 virtually identical to the issue raised in the instant case. In *McParlin* we held that the word "fellatio," when used in conjunction with the charge of "committing an abominable and detestable crime against nature," was nothing more than surplusage. For this reason, we affirmed the conviction even though *McParlin* argued that no evidence of fellatio had been adduced by the prosecution.[2]

We were satisfied that the intent of the statute was such that had the word "fellatio" been omitted from the indictment, the conviction could still have been obtained even in the absence of proof of fellatio, provided that the state established that some act within the scope of the statute had been committed. We reasoned that as long as the indictment states "the essential elements of the offense charged" and the state is able to prove those essential elements, surplusage need not be proven nor such a charge be given to the jury. *Weldon v. United States*, 183 F.2d 832 (D.C.Cir.1950), *cert. denied*, 343 U.S. 967, 72 S.Ct. 1063, 96 L.Ed. 1364 (1952). Because the word "fellatio" need not have been included in the indictment in order to obtain a conviction, failure to prove fellatio did not mandate that we vacate the conviction absent some specific prejudice[3] suffered by the defendant as a result of the inclusion of the surplus term. *State v. McParlin*, 422 A.2d at 744.

In the instant case, Castore challenged the sufficiency of the evidence by way of a motion for judgment of acquittal. However, in applying the holding of *McParlin*, as well as the standard used in evaluating such a motion,[4] it is clear that the record contains ample evidence that would support the trial justice's denial of the motion for judgment of acquittal. For this reason, the motion was properly denied and the case submitted to the jury for its consideration.

Castore acknowledges the rule in *McParlin* but asks that it be reconsidered in the light of what was said earlier in *In re Fiske*, 117 R.I. 454, 367 A.2d 1069 (1977). The *Fiske* case involved a violation of § 11–35–

---

**2.** The evidence adduced at the *McParlin* trial indicated that the act committed constituted *cunnilingus* rather than *fellatio*.

**3.** Castore makes no claim of prejudice, nor can he. Attached to the criminal information is the police narrative with attached exhibits, all of which clearly indicate that at no time was the state attempting to prove the common-law crime of sodomy.

**4.** When a trial justice considers a motion for judgment of acquittal, the credibility of the witnesses and the weight of the evidence are not in issue because the court is required to consider the evidence in the light most favorable to the state, drawing therefrom all reasonable inferences consistent with guilt. *State v. McAssey*, R.I., 432 A.2d 683 (1981); *State v. Smith*, R.I., 401 A.2d 41 (1979).

17, a statute with the intention of protecting the public from an individual who desires to use the telephone for purposes other than congenial or necessary communication. Fiske was a minor who had been charged with being a delinquent. The ground for the delinquency petition was Fiske's past misconduct but more importantly his use of the telephone while communicating with the mother of a female acquaintance. The petition alleged that Fiske had used the phone to harass and annoy the mother. However, the trial justice, in making his finding of delinquency, ruled that Fiske in his telephone conversations with the mother had "threatened her." In vacating the delinquency finding, we pointed out that the General Assembly, in adopting § 11–35–17, had created two separate and distinct offenses, both of which criminalize telephoning another for the purpose of either (1) harassing, annoying, or molesting or (2) using threatening, vulgar, indecent, obscene, or immoral language. Fiske was entitled, first, to know which one of the two statutory offenses he was being charged with and, second, not to be found guilty of an offense differing from the one charged. There is nothing inconsistent between what this court said in *Fiske* and what was said in *McParlin* and repeated here. Castore, unlike Fiske, is charged with a violation of a statute that speaks of criminal activity generically without any elaboration or delineation of the elements of the proscribed activity. Parenthetically, we would note that in *State v. McParlin*, R.I., 422 A.2d 742, 744 n.5 (1980), we expressed somewhat similar distinguishing sentiments to those delineated here.

Castore also argues that the trial justice erred by allowing into evidence testimony proffered by an expert witness relative to the ultimate fact at issue. One of the state's witnesses was Dr. Robert Brauner, chief resident in obstetrics and gynecology at Women and Infants Hospital in Providence, who apparently examined Barbara sometime in the afternoon of March 31, 1979. Doctor Brauner stated that he had previously examined women and children who claimed to be sexual-assault victims and that he had as much experience in these matters as "anybody else in this state." The physician testified that prior to examining Barbara, he took a history from her which included a description of the events that had occurred in the Castore residence. He then conducted a general and pelvic examination of Barbara and also conducted tests on her clothing. He reported that the results of both the general and pelvic examinations were normal and that all laboratory tests, including the test done on Barbara's clothes, were negative insofar as the presence of sperm was concerned.

The state then asked Dr. Brauner if he had an opinion, based on his experience in treating the victims of sexual abuse, about whether or not Barbara had been "assaulted on March 31, 1979." Castore's trial counsel objected to the question, but his objection was overruled. The trial justice instructed the jury then and again during her final charge that even though the opinion of an expert was not dispositive of the ultimate issue in the case, it should not be "lightly discarded."[5] Doctor Brauner, in responding to the pending inquiry, said that "based upon the history that the patient had given there was sufficient reason to reach a conclusion that child abuse may, in fact, have occurred * * *." Defense counsel then moved to strike the answer, and this motion was denied.

◼ The principles governing the admission of expert testimony into evidence are well established. We have previously stated that a trial justice may allow expert testimony into evidence if he or she believes that the "receipt of such information will assist the jury." See *Morgan v. Washinton Trust Co.*, 105 R.I. 13, 249 A.2d 48 (1969); *State v. Kozukonis*, 100 R.I. 298, 214 A.2d 893 (1965). The determination of when such testimony will be admitted necessarily lies within the discretion of the trial justice and is based on his or her evaluation of the

---

5. The trial justice made it clear that she was allowing the opinion into evidence solely because of Dr. Brauner's status as an expert witness.

area under consideration. However, we have heretofore alluded on numerous occasions to the criteria to be applied by the trial justice in determining when expert testimony will be enlightening rather than merely entertaining. We have said the jury will benefit from expert testimony when "the subject matter of the inquiry is one involving special skills and training beyond the ken of the average layman. If all the facts and circumstances can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as is the expert, there is no necessity for the expert testimony." *Barenbaum v. Richardson*, 114 R.I. 87, 90–91, 328 A.2d 731, 733 (1974); *see also State v. Porraro*, R.I. 404 A.2d 465 (1979); *State v. Vargus*, 118 R.I. 113, 373 A.2d 150 (1977).

After a careful examination of the transcript, it is obvious that the opinion expressed by Dr. Brauner was based, not upon his examination of Barbara or upon laboratory tests, but solely on what she had related to him about what went on within the walls of the Castore home. Because his opinion was based on evidence that was not within the realm of his medical capabilities or expertise, and in fact was based on testimony that had already been presented to the jury, it amounted to nothing more than his assessment of the credibility of Barbara's testimony.[6] It is beyond dispute that a determination of the credibility of a witness is solely within the purview of the jury. However, a reading of the record in this case makes it perfectly clear that Dr. Brauner was in effect commenting on Barbara's credibility when he concluded, despite *no* objective medical evidence, that she had been sexually assaulted. Under the circumstances, Dr. Brauner's conclusion was one that the jurors could have drawn for themselves because the expert could give the jury no more help than they already had from the facts testified to by Barbara.

Moreover, it is equally apparent that Castore was prejudiced by this testimony. As noted before, the trial justice clearly indicated to the jury that expert testimony such as Dr. Brauner's should not be "lightly discarded." Although the trial justice was not suggesting that the jurors abdicate their responsibility in determining the ultimate fact issue, she clearly was indicating that Dr. Brauner's testimony was to be given substantial weight. Thus, Dr. Brauner, clothed in the garb of a medical expert, was allowed to evaluate credibility and, in effect, to sit in the jury box and become the thirteenth juror.

The defendant's appeal is affirmed in part and denied in part; the judgments of conviction appealed from, however, are vacated, and the case is remanded to the Superior Court for further proceedings.

---

6. We do not mean to suggest that a medical expert is prohibited from relating to the jury what the patient reported as to the cause of his or her injuries so that the physician could arrive at a diagnosis or establish a course of treatment for the patient. *See State v. Contreras*, 105 R.I. 523, 534–35, 253 A.2d 612, 619 (1969).