STATE

v.

Raquel MORALES.

No. 91–530–M.P.

Supreme Court of Rhode Island.

March 15, 1993.

James E. O'Neil, Atty. Gen., James J. Caruolo, and Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, and Janice Weisfeld, Asst. Public Defenders, for defendant.

OPINION

MURRAY, Justice.

On August 30, 1990, a Providence County jury convicted the defendant, Raquel Morales, of murder in the second degree. On September 6, 1990, the trial justice denied the defendant's motion for a new trial and on October 30, 1990 the trial justice sentenced the defendant to thirty-five years in prison of which twenty years were suspended and with a twenty year probationary period imposed. At trial, private counsel represented the defendant, and after the conviction the defendant believed that this private counsel would file an appeal to this court. Almost one year following her conviction, when the defendant learned that private counsel had not filed an appeal on her behalf, the defendant contacted the Office of the Public Defender, which assigned an attorney to file a petition for writ of certiorari. We issued the writ on October 31, 1991.

The defendant's second-degree murder conviction stemmed from an incident that occurred during the early-morning hours of June 3, 1989. The defendant and Victor Cordeiro (Cordeiro), defendant's boyfriend, began the evening of June 2, 1989, at a local nightclub where Cordeiro consumed a large quantity of alcohol. After leaving the nightclub, defendant and Cordeiro returned to the apartment that the two shared with defendant's son, Edgar Feliciano (Feliciano). Feliciano was present when the couple returned home and testified at trial to the events as they unfolded.

According to the testimony of Feliciano and a statement given by defendant after her arrest, Cordeiro was angry with defendant because Cordeiro wanted to leave the apartment to purchase drugs. The argu-

ment became heated as Cordeiro pushed defendant, hit defendant, and called her a "bitch." Cordeiro then retrieved a gun from a closet, loaded the gun with five bullets, and placed the gun on the kitchen table. Cordeiro then took a bottle of beer from the refrigerator and returned to the bedroom.

As Cordeiro stood in the bedroom, defendant took the gun from the kitchen table and held it behind her back as she walked toward the doorway that led to the bedroom. Feliciano testified that Cordeiro screamed at defendant to give him the gun and then observed defendant "[get] pulled in mighty quick, jerked forward" into the bedroom. Feliciano then heard several shots and saw Cordeiro lying wounded on the floor next to the bed. A doctor at Rhode Island Hospital pronounced Cordeiro dead at 4 a.m. on June 3, 1989.

At trial no one disputed that defendant shot Cordeiro five times. The defense counsel argued in closing argument, however, that defendant shot Cordeiro in self-defense.

I

In this petition for certiorari defendant claims that the trial justice erred in admitting the testimony of Dr. William Sturner concerning certain findings the doctor made during his autopsy of Cordeiro. This dispute arose in the following context. The prosecution introduced Dr. Sturner as an expert in forensic pathology, and Dr. Sturner recited his qualifications, including his various academic degrees. Doctor Sturner testified that he is Chief Medical Examiner in the State of Rhode Island and that he has conducted approximately 9,000 to 10,000 autopsies over the last twenty-seven years. Defense counsel agreed that Dr. Sturner was "eminently qualified" in the field of forensic pathology, and the trial justice qualified Dr. Sturner on the record.

Doctor Sturner testified that five bullets penetrated Cordeiro's body as follows: one bullet through the wrist, one bullet was in the thigh area, one bullet grazed the back, one bullet penetrated the buttocks, and one bullet went through Cordeiro's forehead. Doctor Sturner testified that the bullet through the buttocks was lethal and that the bullet through the forehead caused severe damage to the brain.

Doctor Sturner also explained that it is possible to examine bullet wounds to determine the distance between the barrel of the firing gun and the location of the victim's body. Doctor Sturner testified that when a gun is fired at close range, a residue left from the barrel of the gun marks the skin surrounding the wound and that this marking is known as fouling or stippling. Doctor Sturner further stated that any bullet shot from a distance greater than three feet seldom, if ever, leaves markings around the wound.

Doctor Sturner stated that he examined all the wounds on Cordeiro's body and found no evidence of fouling or stippling; hence, Dr. Sturner concluded that defendant fired the gun from a distance greater than three feet. This testimony was damaging to defendant because it contradicted defense counsel's assertion that a struggle had occurred and that defendant had shot Cordeiro in self-defense.

In light of this important evidence defense counsel significantly tested Dr. Sturner's opinion that defendant fired the gun from a distance of greater than three feet. First, defense counsel asked Dr. Sturner if a bullet would leave markings around the wound if the bullet first passed through clothing before passing through the skin. Doctor Sturner explained that it would be difficult, without scientific tests, to detect fouling or stippling on clothing. Doctor Sturner admitted that with respect to the four of the five bullets that had first passed through Cordeiro's clothing, defendant could have fired the gun from a distance of less than three feet.

In this case only one bullet did not pass through clothing, the bullet that penetrated Cordeiro's forehead. Defense counsel also tested Dr. Sturner's opinion with regard to this head wound by asking the doctor if the fouling or stippling would still be visible if hospital personnel had cleaned the wounds before transporting the body to the State Medical Examiner. Indeed there had been evidence during the trial that rescue workers had cleaned the wound prior to Dr.

Sturner's autopsy. Doctor Sturner testified that a normal cleaning of the wound would not completely wash off the fouling or stippling, and accordingly Dr. Sturner affirmed his earlier opinion that defendant had fired the shot that penetrated the forehead from a distance that was greater than three feet.

## II

The defendant raises two arguments challenging the trial justice's admission of Dr. Sturner's testimony. First, defendant asserts that Dr. Sturner lacked the skill and experience necessary to render an opinion about the distance from which defendant had fired the gun. The defendant argues that Dr. Sturner was an expert in forensic pathology, not firearms, and that a firearms expert is required before a trial justice should admit testimony on the range at which a shooting occurred. In support of this contention, defendant cites a number of cases from other jurisdictions wherein a firearms expert was allowed to testify on this subject. *McPhearson v. State*, 271 Ala. 533, 538, 125 So.2d 709, 713–14 (1960); *State v. Tourville*, 295 S.W.2d 1, 6 (Mo.1956), *cert. denied*, 352 U.S. 1018, 77 S.Ct. 575, 1 L.Ed.2d 554 (1957); *Williams v. State*, 147 Tex.Crim. 178, 184, 179 S.W.2d 297, 300 (1944); *Opie v. State*, 389 P.2d 684, 689 (Wyo.1964).

▮ Rule 702 of the Rhode Island Rules of Evidence governs the admissibility of this expert testimony. It states:

> "*Testimony by experts.*—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

The application of this rule resides with the trial justice and this court will not reverse the trial justice's judgment unless there is an abuse of discretion. *Gaglione v. Cardi*, 120 R.I. 534, 538, 388 A.2d 361, 363 (1978).

We believe the trial justice correctly concluded that Dr. Sturner was qualified to render an opinion on the distance from which defendant fired the gun. Although defendant cites cases wherein a firearms expert testified concerning the gun-to-victim distance, no case that defendant cites precludes testimony by a forensic pathologist on this issue. To the contrary, a number of courts have allowed a forensic pathologist to testify regarding the position of the individual who shot the gun as well as the distance between the gun and the victim. *See, e.g., State v. Tassin*, 536 So.2d 402, 407 (La.1988), *cert. denied*, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989); *State v. Jones*, 749 S.W.2d 356, 363 (Mo.), *cert. denied*, 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988). The controlling factor in a Rule 702 analysis is not whether the proffered expert is a forensic pathologist or a firearms expert. The controlling inquiry is whether the proffered expert is qualified by virtue of his or her "knowledge, skill, experience, training, or education" to deliver a helpful opinion to the jury.

In this case Dr. Sturner testified that he had attended firearms seminars on this subject and had on prior occasions examined wounds for fouling or stippling. In our view the trial justice correctly concluded that Dr. Sturner possessed the requisite skill and experience necessary to render an opinion to the jury.

▮ We now turn to defendant's second argument, that even if Dr. Sturner did possess the requisite skill and experience, his opinion in this case was mere speculation and should have been excluded. The crux of defendant's argument is that Dr. Sturner's opinion lacked foundation because the doctor did not perform, or order a qualified person to perform, scientific tests to support his opinion. Specifically defendant asserts that Dr. Sturner should have submitted defendant's clothes for a "powder test pattern" to determine if any fouling or stippling had occurred. In addition defendant maintains that when Dr. Sturner's visual examination of the forehead wound failed to reveal any evidence of fouling or

stippling, Dr. Sturner should have examined the wound using "infrared photography, chemical detectors, and X-rays." *See* A. Moenssens, F. Inbau & J. Starrs, *Scientific Evidence In Criminal Cases*, ch. 4, § 4.11 at 229 (3d ed.1986).

In support of this argument defendant relies on our decision in *State v. Castore*, 435 A.2d 321, 325–26 (R.I.1981), wherein we rejected testimony offered by an expert regarding a subject matter outside the witness's area of expertise. In *Castore* a gynecologist examined a child and found no physical evidence of sexual assault. Nevertheless the expert testified that in his opinion, based on the history of the patient, sexual abuse may have occurred. *Id.* at 325. We excluded this testimony in *Castore* because the gynecologist did not base his opinion on the examination of the victim and the gynecologist's testimony on the "history" of the victim was clearly outside the realm of the gynecologist's expertise. *Id.* at 326.

*Castore* is very different from the case before us. In contrast to the situation in *Castore*, testifying about gun-to-victim distance was within Dr. Sturner's realm of expertise. Moreover, in *Castore* the gynecologist reached an opinion that contradicted the physical evidence before him. Yet in this case Dr. Sturner's opinion was perfectly consistent with his physical examination of the wounds.

We believe the trial justice correctly concluded that the deficiencies underlying Dr. Sturner's testimony went to the weight to be accorded to the testimony, not to its admissibility. In a number of cases this court has held that absolute scientific certainty is not the standard for the admissibility of expert testimony. *See State v. Bertram*, 591 A.2d 14, 25 (R.I.1991) (holding that degree of conclusiveness of expert testimony is pertinent to the weight the jury should give the testimony, not to the question of whether the evidence is admissible); *State v. Correra*, 430 A.2d 1251, 1254 (R.I.1981) (stating that a court should resolve the uncertainty regarding the validity of expert testimony by admitting the testimony and allowing the opposing party to cross-examine the expert witness fully).

In the present case, defense counsel effectively cross-examined Dr. Sturner. Doctor Sturner admitted that he could not form an opinion about the gun-to-victim distance as it applied to the four of the five bullets that first penetrated Cordeiro's clothing. Defense counsel also weakened Dr. Sturner's testimony in regard to the forehead wound by pointing out that rescue workers had cleaned the wound prior to Dr. Sturner's autopsy. We believe the trial justice correctly placed Dr. Sturner's testimony before the jury and allowed the trier of fact to determine the weight to be accorded this evidence. Accordingly we find that the trial justice did not commit error in admitting Dr. Sturner's testimony.

For the foregoing reasons we deny the defendant's petition for certiorari, the writ previously issued is quashed, and the judgment of conviction is affirmed. The case is remanded to the Superior Court with our decision endorsed thereon.