. Joseph V. OWENS

v.

PAYLESS CASHWAYS, INC. et al.

No. 93–633–Appeal.

Supreme Court of Rhode Island.

Feb. 9, 1996.

Paul S. Cantor, Providence, for Plaintiff.

Mark P. Dolan, Providence, Paul L. Foster, Lincoln, for Defendant.

**OPINION**

BOURCIER, Justice.

In this case we consider whether G.L.1956 (1995 Reenactment) § 5–8–1,[1] mandating the registration of engineers as a prerequisite to practicing in this state, supplants judicial discretion regarding the determination of a witness's qualifications to testify as an expert as provided by Rule 702 of the Rhode Island Rules of Evidence. We hold that the statute and the rule are not in conflict and that it is within the sound discretion of the trial justice to examine the qualifications of a proffered witness and to determine that witness's abili-

ty to testify as an expert in the witness's particular field of expertise.

This case concerns a two-count civil complaint that alleged both negligence and product liability on the part of the manufacturer and the distributor of an aluminum extension ladder. The plaintiff, Joseph V. Owens, sustained personal injuries following a November 1988 fall from one of the defendant's ladders while working in the backyard of his home.

Trial before a jury in the Superior Court commenced in May 1993. The plaintiff, in his case in chief, sought to prove that the ladder he had purchased from defendant Payless Cashways, Inc. (doing business in Seekonk, Massachusetts, as Somerville Lumber) and which was manufactured by one of the defendants, White Metal Rolling & Stamping, Inc., contained inherent structural defects that caused it to buckle under the plaintiff's weight despite the fact that the ladder was being used for its usual and customary purpose. The plaintiff claimed that at the time of his fall he was in the process of painting his house.

In support of his allegations of negligence, plaintiff called as a witness Jerrold Baird (Baird), who holds a Ph.D. in ocean engineering. Baird was proffered as an engineering expert, and was expected to testify in the area of structural analysis and the more specific area of failure analysis. His testimony would have explored how various materials, in this case, metals, react under the stress of applied loads after reaching their breaking point.

In an effort to have Baird qualified as an expert by the trial justice, plaintiff's attorney elicited from the witness during direct examination the witness's educational and employment backgrounds. Baird testified that he was a consulting engineer with the firm of Jordan, Apostal & Ritter Associates in North Kingstown. He testified that he had received a bachelor of science degree in civil engineering from Michigan State University in 1969, a master's degree in ocean engineer-

1. Public Law 1990, ch. 330, § 2, in effect at the time of trial, remains unchanged by the 1995 reenactment, except that the definition of "[p]ractice of engineering" was rearranged from subsection (d) to (f) in § 5–8–2.

ing from the University of Rhode Island (URI) in 1971, and his doctorate in ocean engineering from URI in 1980. The witness also testified that he had, since concluding his formal schooling, attended seminars in the structural-analysis field and had taught upon that subject. He also testified that he had written on the subject of structural analysis, with some of those writings having been published in professional journals. Baird further testified that he previously had been retained by both plaintiffs and defendants for purposes of litigation and had been qualified therein to give expert testimony on the basis of his knowledge of the structural-analysis discipline, and, that four of those expert retainers concerned ladder-failure litigation.

After Baird's qualification examination, plaintiff's attorney requested the court for permission to examine Baird as an expert witness. That motion was objected to by defendants, and the trial justice then permitted defense counsel to voir dire the witness concerning his qualifications. Baird was questioned in regard to whether the opinions he would be rendering required engineering training, education, and experience. Baird replied they would. He was then asked whether he would be acting in the role of an engineer if he gave such testimony in the case, and again, he responded in the affirmative. Defense counsel then asked whether Baird was a "licensed professional engineer in the State of Rhode Island." The doctor replied that he was not licensed. Defense counsel then asked Baird whether he realized that performing services and providing an opinion in the area of engineering without a license would constitute a violation of state law.[2] The plaintiff's counsel immediately objected.

At an ensuing sidebar conference out of the hearing of the jury, defendants contended that Baird should not be allowed to testify as an engineering expert in the case because he was not licensed by the state board of registration for professional engineers pursuant to chapter 8 of title 5 (Engineers). Sec-

tion 5–8–1 provides in pertinent part: "In order to safeguard life, health, and property, and to promote the public welfare, the practice of engineering in this state is hereby declared to be subject to regulation in the public interest. It shall be unlawful for any person to practice, or to offer to practice, engineering in this state, as defined in the provisions of this chapter * * * unless that person has been duly registered or exempted under the provisions of this chapter."

Section 5–8–2(f)[3] further provides by definition that the "[p]ractice of engineering" is "any service or creative work, the adequate performance of which requires engineering education, training, and experience * * * to such services or creative work such as consultation, investigation, evaluation surveys, planning and design of engineering systems, and the supervision of construction for the purpose of assuring compliance with specifications * * * ." The statute, by definition, further provides that the practice of engineering embraces services or work "wherein the public welfare or the safeguarding of life, health, or property is involved or concerned." *Id.*

The defendants asserted, and the trial justice agreed, that the statutory language describing what actions are contemplated by the phrase "practice of engineering" included the giving of testimony as an expert in a court of law. The trial justice's interpretation of the statute was that the General Assembly had intended that a witness could not give an expert opinion in the field of engineering unless he or she had first been licensed by the state. This conclusion was reached by the trial justice despite acknowledging Baird's expert qualifications. The trial justice stated, "I'm willing to concede that he has all of the experience that is necessary for him to render an opinion to assist the jury." In addition, the trial justice also acknowledged that he had in an earlier trial qualified Baird as an expert witness. The trial justice noted, however, that the issue

---

**2.** Counsel was apparently referring to G.L.1956 (1987 Reenactment) § 5–8–20, as amended by P.L.1990, ch. 330, § 2, which makes the practice of engineering in this state without first being registered a misdemeanor.

**3.** Prior to the 1995 reenactment "[p]ractice of engineering" was found in subsection (d).

concerning Baird's lack of state registration as an engineer had not been raised at that time.

The trial justice in his ruling noted that the engineering registration statute (§ 5–8–20) makes unlawful, and a misdemeanor, the practice of engineering without a license. The trial justice said that he could not "separate" the witness's conduct as an expert from "all of the professional activity that is required for him to reach the opinion." The trial justice thereupon concluded that "it is this Court's opinion that the General Assembly says that he cannot give his opinion unless he has a license."

Because of the trial justice's ruling, plaintiff was for all practical trial purposes left totally vulnerable to what was certain to be a directed verdict fate. The plaintiff, sensing that certain doom, requested that his case be passed without prejudice. He was told by the trial justice that what he was actually requesting was a voluntary dismissal so as to permit refiling of the case within one year if that refiling was still within the period of limitations. The defendants objected to any passing of the case, arguing that one of their witnesses had traveled from the State of Illinois and that it was plaintiff's fault for not retaining a properly qualified and licensed witness. The defendants then moved for the anticipated directed verdict, which was granted by the trial justice.[4] The trial justice ruled that in the absence of expert testimony concerning the ladder-failure, plaintiff's evidence would not be sufficient to support either a negligence or a defective product strict-liability theory for recovery. The trial justice opined that without the assistance of such expert testimony, there would be no evidence upon which the jury could base a finding that defendants breached any duty owed to the plaintiff, or find that the mere fact that the ladder had twisted while plaintiff was standing on it, necessarily implied that a design or a manufacturing defect existed.

■ The plaintiff has appealed from the judgment entered on the directed verdict. He contends that the trial justice erred in refusing to qualify Baird as an expert witness based upon his reliance on chapter 8 of title 5. The plaintiff claims that Rule 702 of the Rhode Island Rules of Evidence (Testimony of Experts) firmly places in the trial justice the discretion to determine whether a proffered witness should be qualified as an expert.[5] The plaintiff further cites G.L.1956 (1985 Reenactment) § 9–19–42, as amended by P.L.1987, ch. 381, § 1, which provides that the rules of evidence are controlling and take precedence over any inconsistent statutory or case law in effect at the time the rules were adopted. See also Martinez v. Kurdziel, 612 A.2d 669, 673 (R.I.1992). The qualification of an expert to testify at a trial in this state is a judicial prerogative and function in the first instance. The clear language of § 9–19–42 requires that if we find that the statute governing the registration and licensing of engineers was in existence at the time that our Rules of Evidence were adopted, then we must consequently find that Rule 702 takes precedence over any then existing inconsistent provisions of chapter 8 of title 5. Despite defendants' assertions to the contrary, there have been statutes in this state since 1938 providing for the examination and registration of engineers. The earlier general law, chapter 400, as enacted by P.L.1938, ch. 2611, although providing for the registration of both engineers and land surveyors, bears strikingly similar language to our current statute. The 1938 definition of "professional engineering" contained no explicit, nor do we believe any implicit, legislative intent that a witness in a court of law had to be state registered and licensed as a precondi-

---

4. The trial justice apparently overlooked the involuntary dismissal option available to him in Super. R. Civ. P. 50(a) wherein the dismissal of plaintiff's action could have been without prejudice and not governed by whether the applicable statute of limitations had run, but instead by G.L.1956 (1985 Reenactment) § 9–1–22. Blessing v. Town of South Kingstown, 626 A.2d 204 (R.I.1993).

5. Rule 702 of the Rhode Island Rules of Evidence provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

tion to a judicial determination that he or she was qualified to testify as an expert in the engineering field. We find no language in chapter 8 of title 5 mandating registration as a prerequisite to expert witness qualification. Rule 702 would in any event trump any statutorily implied mandate.

If we were to adopt defendants' contention made on oral argument, we would in effect preclude expert testimony from, for example, Archimedes himself, the Greek mathematician, physicist, and inventor—credited with the discovery of the principle of the lever—had he come to testify in our courts without first obtaining his license to practice engineering in Rhode Island. Wernher von Braun, the father of our national space program, absent a Rhode Island license, would also fall into that category of ineligibility. We do not believe that our Legislature intended that persons of great learning in the engineering field should be barred from testifying in our courts, and assisting the triers of fact, merely because they have not been licensed here in their respective fields of expertise.

■ It is well-settled law that the qualification of an expert witness and the matters to which he or she may testify are considered to be within the sound discretion of the trial justice. *State v. Villani*, 491 A.2d 976, 978 (R.I.1985). Further, we have held that a trial justice's ruling in this area will not be disturbed on review absent a clear abuse of that discretion. *Id; see also State v. Ashness*, 461 A.2d 659, 670 (R.I.1983). These tenets existed prior to the adoption of our Rules of Evidence and have assuredly survived them. *See, e.g., Frias v. Jurczyk*, 633 A.2d 679, 683 (R.I.1993).

Citing Rule 702, we held in *State v. Morales*, 621 A.2d 1247 (R.I.1993), that a forensic pathologist, who was also the state's chief medical examiner, was properly qualified by the trial justice to render an opinion in a murder case concerning the distance between the defendant and a shooting victim. The defendant had argued that the doctor was not qualified to give such testimony and that, instead, a firearms expert was necessary to opine on the gun-to-victim distance. *Id.* at 1249. We held that the "controlling factor in a Rule 702 analysis is not whether the proffered expert is a forensic pathologist or a firearms expert. The controlling inquiry is whether the proffered expert is qualified by virtue of his or her 'knowledge, skill, experience, training, or education' to deliver a helpful opinion to the jury." *Id.* The analysis does not necessarily turn on a proffered witness's title or some license that he or she may hold.[6]

The rationale of the *Morales* holding is in accord with our prior rulings that it is the trial justice who has the final discretion to determine whether a proffered witness's qualifications are such that he or she possesses the requisite knowledge to testify as an expert in order to assist the trier of fact. In the absence of clear legislative intent to the contrary, we shall not remove that discretion.

We recently held in *Soares v. Vestal*, 632 A.2d 647 (R.I.1993) (per curiam), that Rule 702 and § 9–19–41, as amended by P.L.1986, ch. 350, § 5, were complementary, rather than contradictory, and therefore, § 9–19–41 was not superseded by the evidentiary rule. *Id.* at 648. As opposed to § 9–19–41, where there is a specific pronouncement concerning the qualifications of an expert witness in a malpractice case, the engineering regulation statutes do not contain any similar limiting language. We refuse to read any such engineering expert witness qualification language into chapter 8 of title 5.

---

**6.** The General Assembly has, in at least one area, medical malpractice cases, statutorily prescribed the requisite criteria for an expert witness but has not prescribed that he or she need be *licensed* in Rhode Island. Pursuant to G.L.1956 (1985 Reenactment) § 9–19–41, as amended by P.L.1986, ch. 350, § 5, "In any legal action based upon a cause of action arising on or after January 1, 1987, for personal injury or wrongful death filed against a licensed physician, hospital, clinic, health maintenance organization, professional service corporation providing health care services, dentists or dental hygienist based on professional negligence, *only* those persons who by knowledge, skill, experience, training or education qualify as experts *in the field of the alleged malpractice* shall be permitted to give expert testimony as to the alleged malpractice." (Emphasis added.)

■ We find in this case that the trial justice failed to exercise his discretion. He did not err by overstepping his judicial bounds, but instead, by erroneously determining that his individual decision making had been legislatively shackled by chapter 8 of title 5. No such judicial manacles were forged by the General Assembly's adoption of any laws intended to regulate the engineering profession in this state.

For the reasons herein stated, the plaintiff's appeal is sustained, the judgment appealed from is vacated, and we remand the papers in this case to the Superior Court for a new trial in accordance with our opinion.