STATE

v.

Stephen W. NAZARIO.

No. 95–244–C.A.

Supreme Court of Rhode Island.

May 1, 1997.

Aaron L. Weisman, Andrea J. Mendes, Providence, for Plaintiff.

Paula Rosin, Catherine A. Gibran, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

WEISBERGER, Chief Justice.

The defendant, Stephen W. Nazario, appeals from a judgment of conviction entered in the Superior Court following a jury trial held in the county of Newport wherein the jury found the defendant guilty of murder in the second degree. Thereafter the trial justice denied the defendant's motion for a new trial and sentenced him to thirty years' imprisonment of which fifteen years were suspended with the imposition of a fifteen-year probationary term. We affirm the judgment of conviction and deny the defendant's appeal. The facts of the case insofar as pertinent to this appeal are as follows.

On October 30, 1993, the victim, Bernard Pinto (Pinto), was awakened by a conversation between defendant and his girlfriend, Jahphina Pearce (Jahphina), who was fifteen years of age. Pinto had earlier come to Jahphina's mother's apartment at 11 Newport Avenue in the city of Newport in an intoxicated condition and had fallen asleep in a bed made up on the floor. Pinto shouted at the two and ordered them to be quiet and threatened that if they did not comply, he would throw them out a window. The defendant confronted Pinto, and a fight or pushing match ensued. The defendant drew a gun, and Pinto continued a physical struggle with defendant, who struck Pinto on the head with the gun. In the course of the struggle the gun was fired, and Pinto was critically wounded. Jahphina's younger sister, Amy,

who witnessed the struggle, testified that although defendant had an opportunity to leave the apartment during the fight, he did not do so even though Pinto did not prevent him from leaving. Jahphina's recollection differed, and she testified that at no time did defendant have an opportunity to leave the apartment during the course of the struggle.

After firing the gun, defendant went to Pinto and tried to lift him but was unable to do so. Thereafter defendant, Amy, and Jahphina left the building. Shortly after the shooting the Newport police arrived, and defendant helped them to locate the gun, which he had thrown away when he left the apartment building. A firearms expert employed by the Federal Bureau of Investigation testified that a bullet jacket fragment removed from Pinto had been fired from defendant's gun. A forensic pathologist, George Lauro, M.D., performed an autopsy on Pinto and testified that he had died as a result of a single gunshot wound to the head.

The defendant in a statement to Detective Gene Bucci of the Newport Police Department asserted that Pinto had started a fight with him, and that he had tried to leave the apartment but that Pinto had prevented him from doing so. He stated that he drew the pistol only because he wanted to withdraw from the fight but that Pinto charged at him; in the ensuing melee the gun went off, and Pinto was shot.

Three defense witnesses testified concerning Pinto's violent nature. Robert Caplin (Caplin), a Middletown police officer, testified that Pinto had attacked him while Caplin was in the course of arresting Pinto for shoplifting. James Slattery, Jr., who employed Pinto on a fishing boat for several months in 1993, testified that Pinto was a chronic drinker who had engaged in fights with others. He also testified that Pinto was a boxer. Captain Fred Haibon, who maintained records at the Adult Correctional Institutions, testified that Pinto had committed several assaults against both members of the staff and other inmates during his incarceration.

The defendant testified in his own defense, stating that he had been attacked by Pinto, that Pinto would not allow him to withdraw, and that when he pointed the gun at Pinto,

the latter was not deterred and lunged at him. The defendant stated that even though he struck Pinto on the side of the head twice with the gun, Pinto merely stepped back and charged at defendant again. The defendant testified that he swung at Pinto with the hand that held the gun and that as the gun struck Pinto behind the left ear, it discharged.

Amy testified that defendant and Pinto were pushing each other and that defendant was close to the door but did not attempt to leave the room. She stated that Pinto never attempted to prevent defendant from leaving the apartment. She further testified that after the second push by Pinto, defendant drew a gun and pointed it toward the middle of Pinto's head, asking Pinto, "[D]o you want a hole in your head?" Pinto pushed defendant's gun-holding hand down, and defendant raised the gun back toward Pinto's head. Amy stated that Pinto pushed defendant onto a bed. The defendant then hit Pinto on the head with the gun while he had his finger on the trigger. She stated that she never saw Pinto strike defendant but only push him twice. She insisted that defendant could have left the apartment if he had wished to do so.

After hearing this evidence, the jury rejected the contention of self-defense and found defendant guilty of murder in the second degree. In support of his appeal defendant raises three issues. These issues will be considered in the order in which they are raised in defendant's brief. Further facts will be provided as necessary in order to deal with these issues.

I

### Exclusion of Evidence of Prior Convictions of Assault and Burglary

■ Counsel for defendant offered to present a clerk of the Superior Court to authenticate records of convictions wherein Pinto had pleaded nolo contendere to charges of burglary, assault on a person over the age of sixty, and assault with a dangerous weapon. The first two convictions were for offenses occurring nine years prior to trial, the last offense had occurred ten years prior to

trial. It is undisputed that prior to the fatal shooting defendant was not aware of either conviction. The trial justice granted the state's motion in limine to exclude the evidence of the convictions but permitted evidence from other witnesses who testified concerning specific acts of violence on the part of Pinto to show that Pinto's acts had conformed to his prior conduct. The trial justice also allowed evidence of Pinto's reputation for violence.

In *State v. Dellay*, 687 A.2d 435, 439 (R.I. 1996), this court held that evidence of specific acts of violence on the part of a victim where the issue of self-defense has been raised by a defendant, is admissible only as proof of the reasonable-fear element of self-defense and the defendant must have been aware of the victim's prior aggressive acts at the time of the confrontation with the victim. We went on to hold that evidence of other violent or aggressive acts by the victim may not be introduced to establish that the victim acted in conformity with those prior acts of violence on the occasion in question. *Id.* (citing *State v. Tribble*, 428 A.2d 1079, 1085 (R.I. 1981)).

Our opinion in *Dellay* is controlling in respect to this issue. Since specific acts were not admissible in order to prove that the victim was the aggressor in this instance, defendant's proffered evidence of prior convictions of which defendant was unaware at the time of confrontation was not admissible. Indeed, the evidence of specific acts that defendant was allowed to introduce was more than defendant was entitled to present in support of his claim of self-defense. The interpretation of Rules 404(a)(2), 404(b), and 405(b) of the Rhode Island Rules of Evidence as set forth in *Dellay* is conclusive of this issue. Consequently defendant's claim in respect to the denial of introduction of evidence of prior convictions must be rejected.

## II

### Evidence of Victim's Blood Alcohol

The defendant elicited testimony from the pathologist who had conducted the autopsy concerning the victim's blood-alcohol level and its probable effect upon his degree of intoxication. This evidence was admitted, but defendant objects to the comment of the trial justice incident to ruling on the state's objection: "I am going to permit it for what it's worth." The defendant contends this comment indicated the court's opinion on the lack of value of the evidence. We do not believe that the comment had such an effect. From time to time trial justices admit evidence with such a comment instead of making a precise ruling on the admissibility and relevance of the evidence. We believe that trial justices in our state should avoid making such a comment since it is virtually meaningless in regard to the evidentiary ruling and is equally meaningless in respect to the weight of such evidence. Obviously all evidence that is admitted will be evaluated in respect to its weight in the discretion of the jury.

However, we believe that this comment was not prejudicial to defendant, particularly in light of the trial justice's admonition to the jury in his charge that they were the sole judges of the facts in the case with the following instructions:

"Now, you as jurors are the sole judges of the facts in this case * * *. I want you not to draw any inferences from my conduct of this trial. During the course of trial I may occasionally ask questions of a witness. Do not assume that I hold any opinion on the matter to which my questions may relate. The court may ask questions to clarify a matter, to correct its record of the testimony, and that's what I do at this time. I was asking questions not to help one side of the case or to hurt another side, because again, remember, you are the sole judges of the facts in this case.

" * * *

"I want to make it perfectly clear, neither by these instructions, nor by any ruling, remark, or comment I have made, have I or do I intend to indicate to you any opinion which I may have regarding the issue and the facts that you have."

We conclude that these admonitions would dispel any misunderstanding that the jurors might have otherwise entertained because of the comment on admission of evidence "for

what it's worth." This contention on the part of defendant is unavailing.

## III

### Pathologist's Testimony Relating to the Gunshot Wound

During the course of his testimony, the pathologist commented upon the gunshot wound that he had examined as part of his autopsy. The doctor testified that in accordance with the practice of forensic pathology he had examined the gunshot wound for the presence of soot and of stippling, which is the abrasion on the skin caused by unburned gun powder striking the body. He testified that the presence of soot or of stippling "gives an indication as to where that gun was around the head." He further explained that the greater the distance from the victim's head at the time of discharge of the gun, the less stippling and soot would be present. He also testified that since he found no soot or stippling on the victim's scalp, something which may have resulted from the victim's hair blocking it, he was unable to determine the exact distance from the victim's head at which the gun was fired.

Counsel for defendant objected that the pathologist was not qualified to give such an opinion since this knowledge would be confined to a person with expertise in the field of ballistics. With this contention we disagree.

In the case at bar the forensic pathologist was qualified through education, experience, and training to give an expert opinion concerning this subject matter. He had performed more than 3,000 autopsies of which approximately 75 involved gunshot wounds. He further testified that it is the standard practice of forensic pathologists to examine gunshot wounds for soot and stippling in order to determine the distance from which the firearm has been fired.

We have held in *State v. Morales*, 621 A.2d 1247 (R.I.1993), that such testimony is within the expertise of a forensic pathologist. We observed that the application of Rule 702 of the Rhode Island Rules of Evidence in respect to the competence of expert witnesses resides with the trial justice, whose ruling will not be disturbed in the absence of an abuse of discretion. *Morales*, 621 A.2d at 1249 (citing *Gaglione v. Cardi*, 120 R.I. 534, 538, 388 A.2d 361, 363 (1978)). We went on to comment:

"We believe the trial justice correctly concluded that Dr. Sturner [a forensic pathologist] was qualified to render an opinion on the distance from which defendant fired the gun. Although defendant cites cases wherein a firearms expert testified concerning the gun-to-victim distance, no case that defendant cites precludes testimony by a forensic pathologist on this issue. To the contrary, a number of courts have allowed a forensic pathologist to testify regarding the position of the individual who shot the gun as well as the distance between the gun and the victim. [Citations omitted.] The controlling factor in a Rule 702 analysis is not whether the proffered expert is a forensic pathologist or a firearms expert. The controlling inquiry is whether the proffered expert is qualified by virtue of his or her 'knowledge, skill, experience, training, or education,' to deliver a helpful opinion to the jury." *Morales*, 621 A.2d at 1249.

In the case at bar, as in *Morales*, we conclude that the trial justice had ample evidence to support his conclusion that the forensic pathologist had sufficient experience, education, and training to render an opinion relating to soot and stippling and thence to offer an opinion concerning the distance between the gun and the victim's head at the time the shot was fired.

Since we consider *Morales* and the cases cited therein to be fully supportive of the trial justice's decision in this case, we must reject the defendant's contention.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.