**Debra L. LAMOUREAUX**

v.

**MERRIMACK MUTUAL FIRE INSURANCE CO.**

No. 99–351–M.P.

Supreme Court of Rhode Island.

June 8, 2000.

Ralph DellaRose, John G. Hines, Providence, for plaintiff.

Gerard M. De Celles, Smithfield, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

This case is before us on the defendant-insurer's petition for certiorari, seeking review of a Superior Court trial justice's order granting the plaintiff-insured's motion to compel production of the defendant-insurer's claim file and documents relating to the plaintiff-insured. The plaintiff-insured in her original complaint asserted that the defendant-insurer breached its contractual duties towards her under an insurance policy and acted in bad faith by denying her claim under that policy. The

petition came before the Court for oral argument on April 4, 2000, pursuant to an order that had directed both parties to appear in order to show cause why the issues raised in the petition should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by the petition should be decided at this time. For the reasons set forth below, we grant certiorari, quash the discovery order of the Superior Court, order that a dismissal stipulation be signed and entered on the breach-of-contract claim and direct that judgment be entered in favor of the defendant-insurer on the pending claim of bad faith.

I

Case Facts and Travel

The plaintiff-insured, Debra L. Lamoureaux (Lamoureaux), owned a two-story rental building on property located on Cleveland Street in Providence insured by the defendant-insurer, Merrimack Mutual Fire Insurance Company (Merrimack). On February 26, 1995, Lamoureaux, through her insurance agent, notified Merrimack that the insured building had been vandalized in early February. Two days later, a Merrimack insurance adjuster inspected the premises to determine the extent of any damages caused by the reported vandalism. During the course of his inspection, the adjuster observed that the premises appeared to be vacant and unoccupied.[1] Pursuant to the Merrimack policy, coverage for loss caused by vandalism or theft is excluded if a building is determined to have been vacant for thirty consecutive days prior to any such loss.[2] Accordingly, Lamoureaux was requested to produce evidence that the premises had in fact been occupied in satisfaction of the policy provisions. She subsequently submitted as proof of such occupancy a bill sent to her for electricity service showing that electricity had been discontinued to the second-floor apartment on January 3, 1995. Merrimack, however, found such evidence insufficient to demonstrate that the first-floor apartment remained occupied for the thirty-day period before the loss. Additionally, the parties disputed the amount of actual loss incurred as a result of the vandalism. Lamoureaux submitted appraisals of her losses to Merrimack, claiming coverage losses of approximately $39,000. Merrimack, however, appraised such losses at approximately $8,000, after factoring in depreciation cost.

Although Merrimack had not denied Lamoureaux's pending coverage claim as of January 1996, Lamoureaux nevertheless filed suit against Merrimack at that time, alleging both breach of contract relating to Merrimack's failure to acknowledge coverage of the claimed losses, as well as bad faith in denying coverage. In its answer to the complaint, Merrimack denied that it had breached its contract with Lamoureaux or otherwise had acted in bad faith in its handling of her claim. Merrimack also pleaded in its answer Lamoureaux's failure to satisfy the policy exclusion relating to vacancy as an affirmative defense.

After discovery was conducted by both sides, a settlement figure was proposed by Merrimack, which offered Lamoureaux approximately $8,000, the coverage amount originally calculated by its adjuster, to be paid in satisfaction of all claims. Merrimack also sought assurances that two lienholders listed on the Cleveland Avenue property at the time of the claimed loss no

1. Lamoureaux had evicted the second-floor tenant in June 1994. Eviction proceedings had been commenced against the first-floor tenant in October 1994, although it remains unclear from the record when that tenant actually vacated the apartment.

2. The language of the policy specifically provides that Merrimack will not insure loss caused by "vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss."

longer possessed interest in the property.[3] Because however, Lamoureaux refused to provide such assurances, the specter of settlement ultimately proved hopeless, and the suit proceeded to trial before a Superior Court jury in March 1999.

At trial, Merrimack moved for, and was granted, severance of Lamoureaux's bad-faith claim, and the case then proceeded on her breach-of-contract claim. At the close of the plaintiff's evidence, the trial justice declared a mistrial, citing the absence of the two aforesaid lienholders, who were considered to be indispensable parties to the instant action.[4]

In April 1999, Lamoureaux presented a new demand for settlement of the contract claim. Her demand now totaled some $12,000, reflecting the original $8,000 cash loss figure, with added interest and costs. Merrimack agreed to the offer to settle, but conditioned its agreement by requiring that payment be considered full settlement of all claims and be accompanied by a stipulation that all claims be dismissed. Lamoureaux, however, asserted that the dismissal stipulation should reflect that the $12,000 settlement amount pertained only to her breach-of-contract claim and that such claim had been resolved in her favor. Merrimack rejected her assertion, noting that the breach-of-contract claim had been passed at trial and, therefore, there had been no judicial determination made in favor of Lamoureaux relating to that claim. Merrimack, however, eventually did agree to settlement of the contractual damages only, but that acceptance was premised on the entering of a dismissal-with-prejudice stipulation on the breach-of-contract count. Although the exact language of the stipulation remained an open and ongoing question between the parties, Lamoureaux nevertheless was able to procure a settlement check from Merrimack. When the check was received, counsel for Lamoureaux proceeded to unilaterally modify the original "in full settlement of all claims" notation on the settlement check by inserting the word "contract," so that the modified notation read "in full settlement of all contract claims." Despite her acceptance of the settlement check, Lamoureaux refused to sign the accompanying dismissal-with-prejudice stipulation that accompanied the settlement check relating to her breach-of-contract action. The stipulation provided "Count I of the plaintiff's [c]omplaint is hereby dismissed with prejudice." Merrimack, in response, demanded that the settlement check be returned, a demand repeatedly ignored by Lamoureaux. Instead, Lamoureaux, no doubt flushed with this initial taste of apparent victory, filed a motion in the Superior Court seeking production of certain documents relating to her original breach-of-contract claim in order to pursue her bad-faith count 2 claim against Merrimack.

The hearing justice granted Lamoureaux's motion to compel the production of documents, including Merrimack's claim file relating to her claim for coverage. In response, Merrimack petitioned this Court for its writ of certiorari, which was issued on December 20, 1999.[5]

---

3. Subsequent to the reported loss in February 1995, Lamoureaux defaulted on the mortgage and the Cleveland Avenue property was foreclosed upon and sold.

4. Pursuant to subsequent court order, Merrimack filed a third-party complaint against the first lienholder, First Nationwide Mortgage Corporation which stated, in its answer, that it had no claim on any proceeds from any judgment.

5. The issuance of the writ was preceded by an order of the Court:

"(1) Petitioner's motion for a stay is granted with respect to all communications between the petitioner and its counsel subsequent to the filing of suit with the exception of a privilege log listing these communications.
(2) Respondent's request for financial statements disclosing petitioner's net worth is withdrawn without prejudice to a subsequent request for production in Superior Court.
(3) The motion for a stay is denied with respect to all other documents."

## II

### Analysis

Merrimack asserts in its petition for certiorari that the disputed breach-of-contract claim had been settled by Lamoureaux's acceptance of the settlement check, and thus there existed no basis upon which to support her pending claim of bad faith against Merrimack and, as a result, the court-ordered discovery relating to that claim was baseless. We agree.

■ "Before a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract." *Lewis v. Nationwide Mutual Insurance Co.*, 742 A.2d 1207, 1209 (R.I.2000). *See also Bartlett v. John Hancock Mutual Life Insurance Co.*, 538 A.2d 997, 1000 (R.I.1988) ("there can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance"). "If the insurer prevails on the breach-of-contract action, it could not, as a matter of law, have acted in bad faith in its relationship with its policyholder." *Bartlett*, 538 A.2d at 1000.

■ We thus take up and decide the issue of whether the breach-of-contract claim against Merrimack had been settled in such a manner as to preclude Lamoureaux from thereafter pursuing her bad-faith claim. On the record before us, we are persuaded that despite Lamoureaux's protestations to the contrary, the breach-of-contract claim had been settled and extinguished her remaining bad-faith claim. We take particular notice of Lamoureaux's negotiation of the $12,000 settlement check from Merrimack, conditioned upon its being in full settlement of all claims, and her counsel's unilateral and unauthorized modification of the full-settlement notation contained on Merrimack's check and, as well, her continued retention of the settlement amount.

Rhode Island law recognizes:

"The general rule supported by the weight of authority is that a release or a contract of settlement of a disputed claim when timely pleaded is a bar to an action on such claim, so long as it is not rescinded or avoided by a return or offer to return the money or other valuable consideration given for it." *Pelletier v. Phoenix Mutual Life Insurance. Co.*, 49 R.I. 135, 136, 141 A. 79, 80 (1928).

■ Such a proposition also finds support in our well-settled rules of accord and satisfaction, wherein "[a]n agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, which when performed is a bar to all actions." *Kottis v. Cerilli*, 612 A.2d 661, 664 (R.I. 1992) (quoting *Cavanagh v. Bostitch, Inc.*, 92 R.I. 12, 14, 165 A.2d 728, 729 (1960)). The lodestar principle upon which these rules rest "is that one who takes money offered on condition thereby accepts the condition, and in the absence of fraud or other excuse, he [or she] is bound by [that] act." *Hull v. H. A. Johnson & Co.*, 22 R.I. 66, 67, 46 A. 182, 182 (1900). By such a binding arrangement, an offeree "can not affirm the release as valid and operative so far as it is for his [or her] benefit, and disaffirm that part which is beneficial to the [offeror]." *Pelletier*, 49 R.I. at 137, 141 A. at 80.

In this case, Lamoureaux attempted, and apparently succeeded, in garnering the financial benefit from the settlement check in question without first complying with the concomitant obligation of dismissing with prejudice her breach-of-contract claim against Merrimack as provided for by the dismissal stipulation accompanying Merrimack's check. She persistently ignored Merrimack's repeated requests to return the settlement check or to sign and return the accompanying stipulation. Neither was forthcoming. We believe that the evidence in the record and the conduct of the parties during settlement negotiations manifested a clear intention that the settlement check was intended to settle the

disputed breach-of-contract claim between the parties. Indeed, Lamoureaux's counsel's insertion of the word "contract" on the face of the check was telling and illustrative evidence that he himself intended the amount to settle the disputed contract claim. In sum, because the check was good only if it was accepted, as per its plain language, in satisfaction of the contractual claim against Merrimack, Lamoureaux, by accepting and cashing the check with that condition attached, is bound thereby, regardless of her failure to have signed the dismissal stipulation. Lamoureaux should have, if not agreeable to the stipulation, returned the check and attempted to renegotiate a more favorable dismissal stipulation or simply proceeded to litigate her claims against Merrimack.

■ Because we conclude that Lamoureaux's acceptance of the settlement check served to settle and dispose of her breach-of-contract claim against Merrimack, without any judicial determination in favor of Lamoureaux on that count, the absence of that favorable determination on her breach-of-contract claim served to undercut and preclude her bad-faith claim against Merrimack. Accordingly, we remand this matter to the Superior Court with directions to enter a judgment dismissing the plaintiff's breach-of-contract claim with prejudice, and to enter judgment in favor of Merrimack on the plaintiff's bad-faith claim.

For the reasons above set out, the petition for certiorari is granted, the discovery order is quashed, and this matter is remanded to the Superior Court for further proceedings in accordance with the directions herein set out.