**ADP MARSHALL, INC.**

v.

**BROWN UNIVERSITY.**

**No. 2000–422–Appeal.**

Supreme Court of Rhode Island.

Nov. 23, 2001.

Lauren E. Jones, William A. Poore, Providence; Michael T. Eskey; Christopher J. O'Connor, Providence, for Plaintiff.

Christopher H. Little, Providence; Joseph M. Perillo; John E. Bulman, Providence, for Defendant.

Present: WILLIAMS, C.J., BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

The parties are before this Court for the second time, in an attempt to bring closure to a twelve-year dispute over payment for construction of a Brown University (Brown) sports facility. Most recently, a Superior Court jury determined that Brown owes ADP Marshall, Inc. (Marshall), formerly known as Marshall Contractors, Inc., over $1.2 million dollars more than it already paid for the completed project. Because we conclude that none of Brown's arguments affect the validity of the jury verdict, we sustain both the judgments of the trial justice and the jury award.

### I

### Facts and Travel

In 1986, Brown issued an invitation for bids to construct a state-of-the-art sports facility for its campus community. Marshall submitted such a proposal, which was accepted by Brown. The parties intended to execute a formal written contract, but were unable to agree on the scope of the project as compared to the price Brown was willing to pay. Regardless, construction of the "gymnasium," named the Paul Bailey Pizzitola Memorial Sports Facility (Pizzitola), began in May 1987. During construction, the parties disagreed on the scope of the cost estimate provided by Marshall. Brown had decided to pay $7,157,051 for the project. When Marshall sought additional payment for items it

deemed "extras," Brown refused to pay arguing that those costs were included in the original figure. By January 1989, Pizzitola was nearly complete and the parties had not resolved their disagreement. Thereafter, Marshall filed a civil action seeking to recover the cost of the disputed changes.

The trial justice bifurcated the action, considering first whether any contract existed between the parties. The trial justice found that an implied-in-fact contract existed. The trial proceeded on the merits and the jury returned a verdict for Brown. Marshall appealed and this Court concluded that no express or implied-in-fact agreement had ever been reached by the parties concerning the scope of the project and consequently what costs were included in the price Brown previously had stated it would pay. *See Marshall Contractors, Inc. v. Brown University,* 692 A.2d 665, 669 (R.I.1997) (*Marshall I*). Thus, we remanded *Marshall I* to the Superior Court for a new trial.

Marshall amended its complaint and proceeded on the theories of quantum meruit and unjust enrichment. The jury in *Marshall II* awarded Marshall more than $1.2 million dollars. We address only those issues that merit our consideration.

## II

### Proper Measure of Damages

■ Before trial, Brown filed a motion *in limine* asking the trial justice to exclude evidence of the finished value of Pizzitola because it would not be probative of the proper measure of damages. In its opinion, absent an express or implied-in-fact contract, Marshall was entitled to recover only the reasonable value of its services and materials. Marshall argued that the value of the finished Pizzitola, that is, the benefit Brown received, should also be

considered. After hearing the arguments of the parties and considering the memoranda, the trial justice determined that evidence tending to prove either measure of damages would be admissible at trial. However, the trial justice advised the parties that he would reconsider the issue when and if the dispute was raised in the trial context.

■ During Marshall's *DiPetrillo* hearing,[1] Daniel Tully (Tully), an architect and structural engineer, testified that the benefit Brown received, the value of the finished Pizzitola, was approximately $12.5 million dollars. Brown raised no objection. Further, Brown raised no other objection at trial or before instructions were issued to the jury to allow the trial justice to reconsider its agreement. "According to our well-settled 'raise or waive' rule, issues that present themselves at trial and that are not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *Cronan ex rel. State v. Cronan,* 774 A.2d 866, 879 (R.I.2001) (quoting *State v. Anderson,* 752 A.2d 946, 948 (R.I.2000)).

■ The trial justice in this case paid faithful allegiance to our holding in *Marshall I* and refused to permit Brown to continue to argue that an implied-in-fact contract existed. Yet, in doing so, the trial justice mistakenly allowed the jury to consider two separate measures of damages when the proper measure was the fair and reasonable value of the work done. *See Iannuccillo v. Material Sand and Stone Corp.,* 713 A.2d 1234, 1240 (R.I.1998) (citing *Aiello Construction, Inc. v. Nationwide Tractor Trailer Training and Placement Corp.,* 122 R.I. 861, 865, 413 A.2d 85, 87 (1980)). This measure is appropriate "where there was no agreement between the parties but a benefit was conferred on the owner." 2 Steven G.M. Stein, *Con-*

1. *DiPetrillo v. Dow Chemical Co.,* 729 A.2d     677 (R.I.1999).

*struction Law* ¶ 11.03[2][e][ii] at 11–87 (2001); *see also Fondedile, S.A. v. C.E. Maguire, Inc.*, 610 A.2d 87, 97 (R.I.1992) ("The obligation to pay in cases of quasi-contract 'arises, not from consent of the parties, as in the case of contracts, express or implied in fact, but from the law of natural immutable justice and equity.'") (quoting *Hurdis Realty, Inc. v. Town of North Providence*, 121 R.I. 275, 278, 397 A.2d 896, 897 (1979)).

▆▆▆ In refusing to correct the trial justice's error, we remind the parties that a decision on a motion *in limine* need not be taken as a final determination of the admissibility of the evidence referred to in the motion. *See State v. Fernandes*, 526 A.2d 495, 500 (R.I.1987). A trial justice's decision regarding a motion *in limine* may be preliminary or absolute in nature. *See id.* (citing *State v. Bennett*, 122 R.I. 276, 286, 405 A.2d 1181, 1187 (1979)). In this case, the trial justice specifically told the parties that he would reconsider the admissibility of the evidence during trial. It was then up to Brown to reassert its objection at the appropriate time. Brown's failure to do so was fatal.[2]

Brown argues that under federal law no objection is required to preserve for appeal an issue raised by motion *in limine*. Even if this Court were to consider the applicable federal law, Brown's argument lacks merit. Both the recently amended Rule 103 of the Federal Rules of Evidence and pre-amendment First Circuit case law are consistent with *Fernandes*. *See* Fed. R.Evid. 103(a)(2) ("[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before

trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal"); *United States v. Holmquist*, 36 F.3d 154, 166 (1st Cir.1994) (holding that provisional *in limine* evidentiary decisions must be met during trial by offer of proof or objection to preserve for appeal).

### III

### Enforceability of Change Orders

▆▆▆ Contrary to our holding in *Marshall I*, Brown attempted to convince the trial justice that change orders it approved and signed were enforceable as "mini-contracts." Brown's theory, which it properly preserved, is based on the doctrine of accord and satisfaction. The doctrine of accord and satisfaction provides that when two parties agree to give and accept something in satisfaction of a right of action which one has against the other, and that agreement is performed, the right of action is subsequently extinguished. *See Lamoureaux v. Merrimack Mutual Fire Insurance Co.*, 751 A.2d 1290, 1293 (R.I. 2000) (citing *Kottis v. Cerilli*, 612 A.2d 661, 664 (R.I.1992)).

The doctrine of accord and satisfaction does not work to transform the change orders at issue into mini-contracts because of the absence of an original written agreement. A change order is a modification or an amendment to an original agreement. In this case, *Marshall I* makes clear that there is no enforceable original written agreement. Therefore, we refuse to give credit to Brown's argument, which would effectively bind the parties to an amendment made to a nonexistent agreement.

---

2. In addition, even if the issue had been properly preserved we still would decline to disturb the jury verdict based on the doctrine of harmless error. An examination of the interrogatories submitted to the jurors reveals that the jury was asked what the amount of damages was pursuant to both measures of damages. The jury found that both the fair and reasonable value of the work and the fair and reasonable value of the benefit to Brown was $8,979,175.41. The admission of the finished value of Pizzitola was harmless.

Therefore, the trial justice properly declined to require the jury to consider the individual change orders as binding "mini-contracts."

## IV

### Marshall's Expert Testimony

■■■ Brown next argues that Tully, Marshall's expert witness, was not qualified to testify as an expert pursuant to Rule 702 of the Rhode Island Rules of Evidence. This Court will not disturb a trial justice's ruling on the admissibility of expert testimony absent an abuse of discretion. *See Raimbeault v. Takeuchi Manufacturing (U.S.), Ltd.*, 772 A.2d 1056, 1061–62 (R.I.2001) (citing *Gallucci v. Humbyrd*, 709 A.2d 1059, 1064 (R.I.1998)). Pursuant to Rule 702:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

"An expert need not have a license in a narrow specialty, nor hold a particular title, as long as his or her 'knowledge, skill, experience, training, or education' can deliver a helpful opinion to the fact-finder." *Raimbeault*, 772 A.2d at 1061 (quoting Rule 702 and citing *Owens v. Payless Cashways, Inc.*, 670 A.2d 1240, 1244 (R.I. 1996)). "[O]nce an expert has shown that the methodology or principle underlying his or her testimony is scientifically valid and that it 'fits' an issue in the case, the expert's testimony should be put to the trier of fact to determine how much weight to accord the evidence." *Id.* (quoting *Di-*

*Petrillo v. Dow Chemical Co.*, 729 A.2d 677, 689–90 (R.I.1999)).

We conclude that Tully possessed the "knowledge, skill, experience, training, or education" required by Rule 702 and his testimony was "relevant, appropriate, [or] of assistance to the jury." *Raimbeault*, 772 A.2d at 1062 (quoting *DiPetrillo*, 729 A.2d at 686). The trial justice conducted a lengthy hearing in his function as gatekeeper and properly evaluated Tully's qualifications as well as the relevance and reliability of his methodology. *Raimbeault*, 772 A.2d at 1062 (citing *DiPetrillo*, 729 A.2d at 686). Thus, the trial justice did not abuse his discretion in qualifying Tully as an expert on the construction and value of Pizzitola.[3]

## V

### Admissibility of Audit Report

■■■ At trial, S. James Busam (Busam), Marshall's vice president for business development and the Marshall executive in charge of the Pizzitola project, testified that the total unpaid construction cost was $1,209,562.41. Brown then sought to impeach his testimony by referring to a portion of Marshall's fiscal 1989 audited financial statement (audit report) to show that Marshall's losses were significantly less than the million-dollar figure. The trial justice decided that the report was inadmissible absent an adequate foundation, that is, the expert testimony of an accountant.

■■■ "It is well established that 'the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent.'" *Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747,

---

**3.** As previously discussed, the fact that a portion of Tully's testimony was erroneously admitted does not constitute reversible error because the issue was not properly preserved.

758 (R.I.1997) (quoting *Soares v. Nationwide Mutual Fire Insurance Co.*, 692 A.2d 701, 701–02 (R.I.1997)). Furthermore, "this standard is applicable to a trial justice's determinations with respect to both the relevancy of proffered evidence and the adequacy of the foundation laid for its admission." *Bourdon's, Inc.*, 704 A.2d at 758 (citing *Montecalvo v. Mandarelli*, 682 A.2d 918, 927 (R.I.1996) and *Puccio v. Diamond Hill Ski Area, Inc.*, 120 R.I. 28, 38, 385 A.2d 650, 656 (1978)).

If Brown had its way, Busam would have been allowed to explain the inconsistency between the figures contained in the audit report and his previous testimony. Rule 701 of the Rhode Island Rules of Evidence provides that lay witness testimony "in the form of opinions is limited to those opinions that are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." This rule does not allow lay witnesses to opine on subjects that require expertise. *See Hicks v. Vennerbeck & Clase Co.*, 525 A.2d 37, 42 (R.I.1987) (citing *Donahue v. Washburn Wire Co.*, 492 A.2d 152, 153 (R.I.1985) (excluding testimony offered by lay witness regarding complicated medical causation issue)). Technical opinions, such as those required by the audit report in this case, may be better introduced by an expert pursuant to Rule 702.

■ The trial justice was concerned about the jury's ability to understand the audit report, absent the explanation of an expert. Therefore, he advised Brown's attorney that he would reconsider the admissibility of the report, to impeach Busam, if counsel secured the appropriate expert. The decision of the trial justice was an acceptable exercise of his discretion. Brown argues that the report is admissible under either the business records excep-

tion to hearsay, Rule 803(6), or as a non-hearsay admission pursuant to Rule 801(d)(2) of the Rhode Island Rules of Evidence. However, neither the trial justice nor Marshall's attorney were concerned about the audit report's hearsay implications. Admissibility pursuant to one evidence rule does not automatically bar exclusion under a separate rule. In this case, the complicated nature of the evidence permitted the trial justice to exclude the evidence, while giving Brown the option to later call an expert.

## VI

### Motion for New Trial

■ After the jury rendered its verdict, Brown filed a motion for new trial, pursuant to Rule 59 of the Superior Court Rules of Civil Procedure. Brown argued that the damages award was against the fair preponderance of the evidence. The trial justice denied the motion, holding that both sides had presented reasonable and competent evidence on which reasonable minds could differ. The rule of this Court is that:

"On a motion for new trial, 'a trial justice, as he [or she] considers the pros and cons of such a motion, acts as a "super juror" or a "[seventh] juror" in that he [or she] makes an independent appraisal of the evidence in the light of his [or her] charge to the jury. He [or she] can weigh the evidence and assess the witnesses' credibility. He [or she] can reject some evidence and draw inferences which are reasonable in view of the testimony and evidence in the record. * * * If he [or she] determines that the evidence presented an "evenly balanced-reasonable minds could differ" situation, he [or she] denies the motion.'" *Kurczy v. St. Joseph Veterans Association, Inc.*, 713 A.2d 766, 770 (R.I.

1998) (quoting *State v. Doctor,* 690 A.2d 321, 329 (R.I.1997)).

"We have said on numerous occasions that if a trial justice reviews the evidence, comments on the weight of the evidence and the credibility of the witnesses, and exercises his [or her] independent judgment, his [or her] determination either granting or denying a motion for new trial will not be disturbed unless he [or she] has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Kurczy,* 713 A.2d at 770 (quoting *Pantalone v. Advanced Energy Delivery Systems, Inc.,* 694 A.2d 1213, 1216 (R.I.1997)); *see also Votolato v. Merandi,* 747 A.2d 455, 461 (R.I.2000).

The trial justice considered Brown's argument that the jury disregarded its instructions and awarded damages that were unsupported by the evidence. However, in the opinion of the trial justice, both parties presented credible evidence upon which reasonable minds could differ. Therefore, he refused to disturb the verdict. The transcript reveals that the trial justice conducted the appropriate examination, and therefore, we will not disturb his decision to deny Brown's motion.

█ Furthermore, Brown still could not prevail in its attempt to resurrect the measure of damages argument by attacking the jury instructions in its motion for new trial. Once the trial justice instructed the jury on the measure of damages, absent objection, it became the law of the case. *See Sarkisian v. The NewPaper, Inc.,* 512 A.2d 831, 836 (R.I.1986) (citing *Zawatsky v. Cohen,* 463 A.2d 210, 212 (R.I. 1983)).

### Conclusion

Accordingly, Brown's appeal is denied and dismissed and the judgment is affirmed. The papers in the case may be remanded to the Superior Court.

Justice LEDERBERG did not participate. While Justice FLANDERS was present at oral argument, he did not participate in this decision.