July 15, 2025

**Supreme Court**

No. 2024-314-Appeal.
(WD 24-282)

E.H. Turf Supply Co., Inc. d/b/a Allen's    :
            Seed

            v.                              :

    Roger Tavares.                          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

E.H. Turf Supply Co., Inc. d/b/a Allen's :
              Seed

              v.                          :

        Roger Tavares.                    :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  Rogerio[1] Tavares (defendant or Mr. Tavares) appeals from a Superior Court judgment entered in favor of E.H. Turf Supply Company, Inc. d/b/a Allen's Seed (plaintiff or E.H. Turf Supply) in the amount of $1,703.71.  E.H. Turf Supply alleged, initially in District Court, that Mr. Tavares stopped payment on a check he tendered for services that E.H. Turf Supply performed to fix Mr. Tavares's tractor; Mr. Tavares appealed the District Court's judgment to the Superior Court.  Before this Court, Mr. Tavares alleges that the Superior Court erred in (1) allowing E.H. Turf Supply to present its case first; (2)

---

[1] Since its inception, the caption of this case has identified Mr. Tavares as "Roger" rather than "Rogerio," his preferred name.  Out of respect for Mr. Tavares, this Court will use his preferred name.

- 1 -

ruling that certain evidence that Mr. Tavares sought to introduce was inadmissible; and (3) failing to consider his status as a self-represented litigant during the trial.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that we may decide this case without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Procedural History

This is the second small-claims action filed in District Court by E.H. Turf Supply against Mr. Tavares. In its first complaint, filed in February 2022 (2022 complaint), E.H. Turf Supply alleged that Mr. Tavares had stopped payment on a check tendered to E.H. Turf Supply for maintenance performed on Mr. Tavares's tractor; the initial complaint sought payment in the amount of $1,703. Mr. Tavares returned the summons generated in that action without signing it, and the suit was later voluntarily dismissed without prejudice.

In January 2024, E.H. Turf Supply filed the instant action in District Court again seeking payment for services (2024 complaint). Mr. Tavares filed an answer in which he denied the allegations in the complaint and argued that plaintiff's counsel had been a "no-show" on the date of trial on the 2022 complaint and that,

therefore, E.H. Turf Supply's choice to refile its complaint demonstrated "bad faith" and a violation of the rules of professional conduct. Mr. Tavares also asserted a counterclaim "for services not rendered" and sought $2,500 in compensatory damages. The form on which Mr. Tavares asserted his counterclaim stated that, "[b]y filing this counterclaim, I waive my right to appeal on the counterclaim only." The document further stated, in all-capital letters above the signature line, "THE DEFENDANT WAIVES RIGHT TO APPEAL ON COUNTER CLAIM ONLY."

The District Court held a bench trial on May 20, 2024. At the conclusion of the trial, judgment entered in favor of plaintiff with an award of damages in the amount of $1,500 plus costs. Mr. Tavares filed a notice of appeal on the same day that judgment entered.

On May 30, 2024, the Superior Court issued a notice scheduling trial for June 21, 2024; and Mr. Tavares filed a statement of the case arguing that the District Court had "denied [him], the defendant, and a pro se litigant, the fair opportunity to present [his] case and evidence." Mr. Tavares argued (1) that the voluntary dismissal of the 2022 complaint was never properly served on him; and (2) that the District Court judge erred by accepting plaintiff's 2024 complaint without following "specific procedural rules to prevent abuse of the legal process," by allowing plaintiff to file its 2024 complaint which, he alleged, had been refiled as "a strategic move to gain an unfair advantage in the litigation process," and which the District

- 3 -

Court had accepted "without proper scrutiny," and by denying him the right to introduce evidence at trial. Mr. Tavares also argued that the District Court was biased in favor of plaintiff, erred by relying on the facts contained in plaintiff's witness's testimony rather than his own, and by misinterpreting the evidence, which, he urged, was inadequate to establish liability.

A one-day bench trial commenced on July 26, 2024. *See* G.L. 1956 § 9-12-10. E.H. Turf Supply, as the plaintiff who filed the underlying 2024 complaint, presented the testimony of Erik Hagenstein (Mr. Hagenstein), the president and owner of E.H. Turf Supply, first. Mr. Tavares objected to Mr. Hagenstein being called as a witness on the grounds that he had not received "prior notice or disclosure of the witness, [he was] prejudice[d] due to nondisclosure" and that Mr. Hagenstein's testimony was irrelevant; the court overruled his objection.

Mr. Hagenstein testified regarding E.H. Turf Supply's procedure to diagnose and fix broken equipment. He testified that in a job like the one Mr. Tavares requested,

> "we would go through what's to be done, performed, what parts may be involved, provide an estimate. If we're given an approval, we go ahead and perform that work, and when the customer comes in, we basically start the machine, operate it, show them what we did, explain it, and * * * if everybody's in agreement * * * they pay for the work done and take the unit."

Mr. Hagenstein testified that he was not directly involved with Mr. Tavares's tractor, but Mr. Hagenstein was nonetheless able to identify the estimate that E.H. Turf Supply provided to Mr. Tavares. Mr. Hagenstein further testified that Mr. Tavares's signature was on the bottom of the estimate, that the estimate was converted into an invoice when "everybody's in agreement" and "the work [was] performed," and that the services provided for in the estimate were performed at the cost provided in the estimate.

Additionally, Mr. Hagenstein testified that E.H. Turf Supply received a personal check from Mr. Tavares for the full amount owed on the date of completion of its work, a copy of which was entered into evidence without objection. E.H. Turf Supply then released the tractor to Mr. Tavares. After receiving the check, E.H. Turf Supply's bank informed plaintiff that there was a stop-payment placed on the check by Mr. Tavares. Mr. Hagenstein testified that E.H. Turf Supply then attempted to reach out to Mr. Tavares, including by certified letter,[2] without receiving a response, and then called the state police. Mr. Hagenstein testified that, at the time of trial, E.H. Turf Supply had not received payment for its services.

Mr. Tavares conducted extensive cross-examination of Mr. Hagenstein, questioning whether his company was certified to work on John Deere tractors,

---

[2] Mr. Tavares objected to introduction of a copy of the certified letter as a full exhibit. The trial justice noted his objection but overruled it, concluding that "plaintiff ha[d] met its burden of proof by making appropriate foundation."

whether E.H. Turf Supply had contacted John Deere to "assist" with the repair of the tractor, whether Mr. Hagenstein was familiar with the type of tractor Mr. Tavares brought in, and whether Mr. Hagenstein was confident in the accuracy and completeness of the work performed by his employees. Mr. Tavares further inquired into damage to the hood of his tractor, which he alleged was caused by E.H. Turf Supply employees, and, with the assistance of the trial justice, introduced a police report detailing that damage. However, Mr. Tavares did not ask Mr. Hagenstein any questions about the police report.

Mr. Tavares also questioned Mr. Hagenstein about the work listed in the estimate. Mr. Hagenstein testified that he did not recall why Mr. Tavares had brought in his tractor. Mr. Tavares then asked whether the problems listed on the estimate could indicate "an issue with stalling on a tractor" to which Mr. Hagenstein responded, "I guess if it's not charging, yes, I could see that stalling."

On redirect examination, counsel for E.H. Turf Supply asked Mr. Hagenstein to confirm that the estimate contained a statement at the end that read: "talked to Roger, all set" and that Mr. Tavares had signed the estimate. Mr. Hagenstein confirmed that that notation indicated to him "[t]hat [E.H. Turf Supply] went over what * * * work was performed, * * * any issues he may have had, they were addressed, and * * * it's all set."

After redirect examination, and while Mr. Hagenstein was still on the stand, Mr. Tavares sought to introduce invoices from three businesses other than E.H. Turf Supply. The first was an invoice from a John Deere dealer in Massachusetts. The plaintiff objected. Mr. Tavares explained that he sought to introduce the exhibit to show that "the belts that [E.H. Turf Supply] said they * * * replaced * * * [still] needed to be replaced" after the tractor was picked up, corroborating his defense that there were still issues with his tractor after plaintiff's service. The trial justice sustained plaintiff's objection on the grounds that the invoice constituted hearsay, marked the invoice for identification only, and instructed Mr. Tavares that he was permitted to testify about the steps he took after picking up the tractor from E.H. Turf Supply.

Next, Mr. Tavares sought to introduce a second invoice for items he had purchased before he brought his tractor to E.H. Turf Supply. That invoice, which was admitted as a full exhibit, showed that he had purchased hydraulic fluid on November 17, 2020.

Finally, Mr. Tavares sought to introduce a third invoice from another repair shop. The plaintiff restated its objection to that exhibit, and the exhibit was marked for identification. Mr. Tavares then showed Mr. Hagenstein the third invoice and asked why a subsequent repair shop would have flushed hydraulic fluid from the tractor "within a short time frame" after E.H. Turf Supply said it did the same thing.

- 7 -

Mr. Hagenstein explained that the other shop's invoice reflected that "a transmission * * * was swapped from another model" and the fluid listed on their invoice was "new transmission fluid."

Before the close of testimony, the trial justice asked Mr. Tavares whether he had "anything [he] want[ed] to tell me that [he] ha[dn't] already told me?" Mr. Tavares testified that Mr. Hagenstein was not credible "given his limited experience with the John Deere tractor 332 model and the lack of evidence supporting his shop's certification to work on John Deere diesel engines." Mr. Tavares also stated that Mr. Hagenstein's "failure to adequately communicate" with him about the parts needed to fix his tractor and the fact that E.H. Turf Supply had to consult a John Deere dealer during their repairs "raises concerns about the thoroughness and the reliability of the repairs performed." Mr. Tavares also took issue with the fact that Mr. Hagenstein was "not the mechanic" and that his testimony differed from the bookkeeper who testified for E.H. Turf Supply in District Court. Mr. Tavares asserted that these factors "collectively diminish[ed] the truthfulness, the trustworthiness of [Mr. Hagenstein's] testimony * * *."

The trial justice subsequently issued her decision from the bench. The court summarized the procedural history of the case and detailed the testimony heard at the trial. She noted that Mr. Hagenstein testified that the services outlined in the estimate, which was converted into an invoice, had been performed; that the cost of

- 8 -

the services was accurate; and that Mr. Tavares made a payment for the services reflected in the estimate, a copy of which he received at the time he picked up the tractor. The trial justice found that defendant owed $ 1,703.71. The trial justice also found that it was undisputed that Mr. Tavares paid that amount and that he then stopped payment on his check. The trial justice acknowledged that defendant "did testify, without objection, that he did not believe the work was performed," but that there was no admissible evidence to substantiate that belief "because the [c]ourt has not allowed the introduction of full exhibits * * * [from] subsequent companies that have looked at the tractor." The trial justice therefore found that E.H. Turf Supply was entitled to judgment in the amount of $1,703.71.

The Superior Court entered judgment on August 29, 2024. Mr. Tavares filed his notice of appeal to this Court on September 3, 2024.

**Standard of Review**

This Court reviews "the factual findings of a trial justice sitting without a jury" deferentially. *Greensleeves, Inc. v. Smiley*, 68 A.3d 425, 433 (R.I. 2013) (quoting *Pelletier v. Laureanno*, 46 A.3d 28, 35 (R.I. 2012)). As a result "we will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Id.* at 433-34 (quoting *Grady v. Narragansett Electric Company*, 962 A.2d 34, 41 (R.I.

- 9 -

2009)).  However, "we review *de novo* the trial justice's conclusions of law." *Id.* at 434.

## Analysis

On appeal, Mr. Tavares argues, first, that the trial justice erred in denying him the right to obtain discovery about plaintiff's witness, Mr. Hagenstein, and that Mr. Hagenstein's testimony was irrelevant.  Second, he contends that the trial justice erred when she allowed plaintiff to present its argument first, relied on testimony from witnesses who were not well informed on the complexities of the repair of his tractor in reaching her conclusion, and excluded evidence of repairs from other dealers, all of which amounted to structural error.  And, third, Mr. Tavares argues that the trial justice erred in failing to consider his status as a self-represented litigant.[3]

## A. Mr. Hagenstein's Testimony

The defendant first contends that the trial justice erred in denying him the opportunity to obtain discovery with regard to Mr. Hagenstein's trial testimony and certain exhibits presented at trial.  He further contends that Mr. Hagenstein was a surprise witness, and that Mr. Hagenstein's testimony was irrelevant.  Mr. Tavares

---

[3] Mr. Tavares makes certain arguments in his statement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure regarding the conduct of the trial in the District Court.  However, because this appeal arises from a *de novo* trial before, and entry of judgment by, the Superior Court, we confine our review to that proceeding and judgment.

- 10 -

objected to Mr. Hagenstein's testimony at trial, and the trial justice overruled his objection.

The defendant's arguments are without merit. First, Mr. Tavares's allegation that the trial justice erred in denying him discovery with regard to Mr. Hagenstein's testimony and plaintiff's exhibits is without merit because Mr. Tavares was not entitled to discovery in Superior Court on appeal from the District Court. Rule 81(b) of the Superior Court Rules of Civil Procedure states that, on appeal from the District Court, "[t]he provisions of Rules 26 through 37, relative to discovery, shall not be applicable" unless a party makes a showing that lack of discovery will result in injustice or undue hardship. Therefore, Mr. Tavares was not entitled to discovery of plaintiff's witnesses or evidence, and there is no indication that Mr. Tavares ever argued that the lack of discovery would result in injustice or undue hardship. As a result, he was not entitled to pretrial discovery of Mr. Hagenstein's testimony. For this reason, there is similarly no merit to Mr. Tavares's assertion that Mr. Hagenstein was a surprise witness or that he suffered trial by ambush.

Second, Mr. Tavares argues that the testimony Mr. Hagenstein provided was irrelevant because he did not possess specific knowledge about the model tractor that Mr. Tavares asked E.H. Turf Supply to fix. Evidence is "relevant" when it renders any fact of consequence more probable than it would be without the evidence. R.I. R. Evid. 401. Here, the *de novo* trial before the Superior Court was aimed at

discerning whether Mr. Tavares was obligated to tender payment to E.H. Turf Supply for services rendered. Mr. Hagenstein testified regarding Mr. Tavares's delivery of the tractor to E.H. Turf Supply, E.H. Turf Supply's procedures for assessing the tractor and confirming repairs with the owner, Mr. Tavares's acceptance of the estimated cost of the repairs, and Mr. Tavares's payment of the cost of repairs after work had been completed but prior to stopping payment on his check. Each of these facts were necessary for the trial justice to make the ultimate determination regarding whether Mr. Tavares was liable for the unpaid invoice, and his testimony was therefore relevant.

Mr. Tavares nevertheless suggests that, because Mr. Hagenstein did not possess working knowledge of the mechanical issues associated with his particular tractor, all of Mr. Hagenstein's testimony was irrelevant and should not have been admitted. This argument, however, conflates substantive knowledge of the mechanical issues for which Mr. Tavares initially contacted E.H. Turf Supply with Mr. Tavares's obligation to pay for services rendered under the invoice to which he provided his consent. This latter question was the only question presented to the Superior Court at the *de novo* trial, and because Mr. Hagenstein's testimony was relevant to that question, the trial justice did not err in admitting or relying on Mr. Hagenstein's testimony.

## B. Procedural Issues

Mr. Tavares next argues that the trial justice committed error when she allowed E.H. Turf Supply to present its evidence first and forced him to present his evidence second. Specifically, Mr. Tavares argues that "the Trial Court's decision to allow [E.H. Turf Supply] to proceed and make [its] argument before [him] affected [his] ability to properly present his arguments and satisfy his burden of proof as the Appellant." This argument likewise fails.

Mr. Tavares appealed the District Court judgment to Superior Court under a statute entitled "Claim of appeal of superior court." Section 9-12-10. Under that statute, an appealing party has a statutory right for the Superior Court to exercise its independent judgment in passing on the merits of the case by holding a new trial. *Val-Gioia Properties, LLC v. Blamires*, 18 A.3d 545, 549 (R.I. 2011). When the Superior Court holds a new trial, what we call a *de novo* trial, it is "conducted as if there had been no trial in the first instance." Black's Law Dictionary 1737 (10th ed. 2014). Therefore, Mr. Tavares's appeal proceeded under the Superior Court Rules of Civil Procedure regarding trials in that court. Rule 43(f)(1) of those Rules states that the party bearing the burden of proof shall open and close the case at trial. *See* Super. R. Civ. P. 43(f)(1).

In hearing the case anew, the Superior Court was required to assess the merits of E.H. Turf Supply's 2024 complaint as if it had been first filed in Superior Court.

E.H. Turf Supply, as the plaintiff in the 2024 action, bore the burden of proof to show that Mr. Tavares owed that company money for services rendered on his tractor. Thus, under the Superior Court Rules, E.H. Turf Supply and not Mr. Tavares was required to open the case because it was the party that bore the burden to prove the allegations in the 2024 complaint. *See* Super. R. Civ. P. 43(f)(1). Therefore, Mr. Tavares's argument that the trial justice erred in allowing E.H. Turf Supply to proceed first is without merit.

### C. Evidentiary Error

Mr. Tavares also alleges that the trial justice violated his right to due process when she excluded particular pieces of evidence that he attempted to introduce at trial. It is well established that the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent. *ADP Marshall, Inc. v. Brown University*, 784 A.2d 309, 314 (R.I. 2001).

Mr. Tavares sought to introduce three exhibits: an invoice from a Massachusetts John Deere dealer (which was marked for identification), and two other invoices, one from before E.H. Turf Supply's repairs (which was admitted as a full exhibit), and one from after (which was marked for identification). The trial justice determined that invoices marked for identification purposes only were hearsay and therefore could not be admitted as full exhibits. Because the second

invoice was admitted as a full exhibit, we confine our review to assess whether the trial justice committed an abuse of discretion by marking the first and third exhibit for identification purposes only.

The trial justice did not abuse her discretion in finding that the first and third exhibits were hearsay and marking them only for identification purposes only. Our rules define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." R.I. R. Evid. 801(c). Mr. Tavares informed the trial justice that he sought to introduce the first invoice to show "the issues that [he] was still having" after picking the tractor up from E.H. Turf Supply. In essence, Mr. Tavares sought to use the statements in this invoice and the third invoice regarding later repairs to his tractor as proof that E.H. Turf Supply had not completed its obligation to repair the tractor. In order to be admitted on this basis, the statements in the invoices would need to be accepted as reliable proof. Under our rules, however, the invoices would be inadmissible for that purpose unless, among other things, someone from the business who created the invoice could attest that the invoice was accurate. *See* R.I. R. Evid. 801(c); 803(6) (defining the regularly conducted activity exception to hearsay). Because no one from those dealers was present to testify regarding their contents, the invoices were inadmissible for the truth of their contents, and the trial

- 15 -

justice did not abuse her discretion by allowing them to be marked for identification purposes only.

Relatedly, Mr. Tavares also argues that the trial justice's purported errors constituted a fundamental or structural error that affected the fairness of the proceeding. For the reasons stated in this opinion, we conclude that the trial justice did not commit error during the Superior Court trial; and, consequently, there is no "structural error" on which to reverse the trial justice. Further, even if we concluded that the trial justice had committed error, this Court has not formally adopted the "structural error" or "defect" framework explained by the Supreme Court in *Arizona v. Fulminante*, 499 U.S. 279 (1991), on which Mr. Tavares principally relies. And even if we decided to look to *Fulminante* for guidance, it is distinguishable. That case, and the cases cited therein, primarily concern overt constitutional violations affecting the framework of the trial itself. *See Fulminante*, 499 U.S. at 309-10 (citing cases involving exclusion of members of the defendant's race from a grand jury, deprivation of the right to counsel, and violations of the right to self-representation and to a public trial). Our review of the record in this case, however, does not reveal the kinds of constitutional deprivations identified in *Fulminante* as warranting

reversal under the structural error framework. Therefore, we decline to reverse the trial justice on that ground.

Mr. Tavares additionally cites Rule 61 of the Superior Court Rules of Civil Procedure for the proposition that "errors that affect the substantial rights of the parties" provide grounds to reverse a judgment. However, that rule contains an important caveat omitted from Mr. Tavares's citation: that "no error in either the admission or the exclusion of evidence and no error or defect in any ruling * * * is ground for granting a new trial or for setting aside a verdict" unless it is inconsistent with substantial justice. Super. R. Civ. P. 61. Here, Mr. Tavares's primary contentions of error relate to the introduction and presentation of evidence and the availability of discovery. By its own terms, those are not the types of errors that Rule 61 is designed to rectify. And, because the trial justice's decisions did not interfere with Mr. Tavares's ability to mount a defense, her rulings were not inconsistent with substantial justice. *See id*. Accordingly, Rule 61 is not a viable ground on which this Court can reverse the trial justice.

### D. Self-Represented Litigant

Finally, Mr. Tavares alleges that the trial justice failed to consider his status as a self-represented litigant when presiding over his trial. Mr. Tavares is correct that trial justices should be considerate towards self-represented litigants, but those litigants choosing to proceed without an attorney are still bound by the Superior

Court Rules of Civil Procedure and the Rhode Island Rules of Evidence. *Oliveira v. Levesque*, 294 A.3d 994, 998 (R.I. 2023) ("[A]lthough '*pro se* litigants are often granted greater latitude by [a] court,' they are not exempt from our rules.") (quoting *Terzian v. Lombardi*, 180 A.3d 555, 558 (R.I. 2018)). When an individual elects to proceed as a self-represented litigant, they undertake a difficult task; but the courts "cannot and will not entirely overlook established rules of procedure" just because a litigant is self-represented. *Jacksonbay Builders, Inc. v. Azarmi*, 869 A.2d 580, 585 (R.I. 2005) (quoting *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R.I. 1987)).

The trial justice reasonably provided Mr. Tavares with significant leeway during the course of the trial. The trial justice assisted Mr. Tavares by explaining the process for introducing and using evidence presented for his defense. During the Superior Court proceeding, the trial justice explained her rulings to make sure Mr. Tavares understood them. Moreover, when Mr. Tavares attempted to introduce his first and third invoices as exhibits, the trial justice allowed him an opportunity to explain how they would be used, then ruled that they were inadmissible as full exhibits, but instructed Mr. Tavares that he could testify about the events surrounding their creation. The trial justice further conferred with Mr. Tavares to determine whether he wanted to be a witness himself and, when he elected to take the stand, asked, "is there anything you want to tell me that you haven't already told me?" Mr. Tavares was subsequently able to provide testimony, which would have

- 18 -

been otherwise absent from the record, on the reasons why plaintiff's version of events should not be believed. Mr. Tavares's status as a self-represented litigant does not afford him any greater rights than any other litigant appearing in our courts, and yet the trial justice provided him with considerable flexibility to present a defense to E.H. Turf Supply's allegations. On the record before us, we cannot say that the trial justice erred in her management of this *de novo* trial.

## Conclusion

For the reasons contained herein, the judgment of the Superior Court is affirmed. The papers may be returned to the Superior Court.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | E.H. Turf Supply Co., Inc. d/b/a Allen's Seed v. Roger Tavares. |
| **Case Number** | No. 2024-314-Appeal.<br>(WD 24-282) |
| **Date Opinion Filed** | July 15, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Jonathan J. Lucido, Esq. |
| | For Defendant:<br><br>Roger Tavares, *pro se* |